(Nos. 52368, 52472 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MIGUEL VALDEZ, Appellant (Robert A. DeVito, Director of Mental Health and Developmental Disabilities, Appellant).

*Opinion filed Feb. 1, 1980.—Rehearing denied Mar. 28, 1980.*

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant Miguel Valdez.

William J. Scott, Attorney General, of Springfield (Alan E. Grischke and John J. Posch, of Chicago, Special Assistant Attorneys General), for appellant Director of the Department of Mental Health and Developmental Disabilities.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Eisen-Stein, and Wesley H.H. Ching, Assistant State's Attorneys, of counsel), for the People.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

On May 3, 1978, following a bench trial in the circuit court of Cook County, defendant, Miguel Valdez, was acquitted by reason of insanity (Ill. Rev. Stat. 1977, ch. 38, par. 115—3) of the murders of Lecia Agsaoay on April 3, 1977, and Dr. Jesus Lim on April 4, 1977. On May 11, 1978, in a hearing held pursuant to section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(a)) defendant was found in need of mental treatment and remanded to the Department of Mental Health and Developmental Disabilities (hereafter

the Department). The Department placed defendant for care and treatment at the John J. Madden Mental Health Center. Apparently in response to a notice dated November 1, 1978, that the Department was "considering granting [Valdez] off-grounds privileges to start December 15, 1978, in the company of his wife," the State's Attorney of Cook County, pursuant to section 5—2—4(d) (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(d)), requested a hearing. Defendant filed a "Petition for Discharge or Release to Isaac Ray Center." On November 29, 1978, the Department notified the court that it had decided against recommending off-grounds privileges. We note parenthetically that neither of the notices given by the Department is contained in the record.

The circuit court overruled defendant's objection that by reason of the notice of November 29, 1978, the matter was moot, and conducted an evidentiary hearing. Following the hearing the court entered an order in which it found that housing defendant with patients who receive only short-term treatment whereas he was in need of long-term care involving extensive psychiatric treatment was of "possible detrimental effect to [defendant's] treatment." The court ordered that the Department establish a treatment plan for defendant to provide individual treatment from a qualified psychiatrist for at least two sessions per week, each session to be not less than 45 minutes in length; counseling by a psychologist—mental-health specialist, familiar with his case, for a period of not less than 30 minutes each day, three times each week; and family and group therapy. The court also ordered that within 90 days of the entry of the order, the Department publish a memorandum directed to all of its units setting forth procedures and regulations to be followed in all cases in which the Department receives into its custody, care and control a patient committed under section 5—2—4 of the Unified Code of Corrections. Defendant and the Department appealed. We allowed direct appeal (73 Ill. 2d

R. 302(b)) and consolidated the appeals for argument and opinion.

The testimony showed that defendant was assigned to one of eight pavilions at Madden, each of which provided residence for 28 persons. The pavilion to which he was assigned was staffed by one psychiatrist, a staff nurse (one nurse on each of three shifts), a social worker and an activity therapist. The individual involved in the therapy testified that although defendant, because of his acquittal, was considered "a special case," he was seen by the psychiatrist only once each week for approximately 15 minutes and by the mental health specialist social worker only once each week for 15 to 30 minutes. During the 11-month period of his residence in that pavilion, it had been headed by three different psychiatrists, none of whom had established an active treatment program for defendant. Although he attended group therapy sessions, defendant did not participate in discussion. The testimony indicated that the effect of the group therapy was lessened because the pavilion to which defendant was assigned had a rapid rate of patient turnover and defendant was the only long-term-care patient residing in the pavilion.

The transcript contains conflicting professional opinions as to whether defendant had improved during his period of residence at Madden. Apparently he was continued on drug therapy to reduce the effects of his paranoia. Although his wife visited often, no family group therapy was instituted for him.

Dr. Robert A. Reifman, a psychiatrist and director of the Psychiatric Institute of the circuit court of Cook County, testified that defendant should be treated "on a deep therapy basis" which would involve seeing a psychiatrist once or twice each week.

Dr. James L. Cavanaugh, clinical director of the Department of Psychiatry at Rush-Presbyterian Hospital, testified that defendant's treatment program should include "ongoing psychopharmacological treatment,"

group therapy, and family psychotherapy, and that if he were under the care of the Isaac Ray Center at Rush-Presbyterian Hospital "we would start out by seeing him two times a week, definitely."

At the time of the murders of which defendant was acquitted by reason of insanity, section 5—2—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—4(b)) provided that in the event of such acquittal the circuit court "shall enter an order finding the defendant to be in need of mental treatment and hospitalizing the defendant in the custody of the Department of Mental Health and Developmental Disabilities for an initial period not to exceed 12 months from the date of such order. The order of the court shall be in the form of and shall produce the same effects and subsequent review proceedings as an order of hospitalization under the Mental Health Code of 1967 ***." Release from such commitment was governed by the Mental Health Code of 1967 (Ill. Rev. Stat. 1975, ch. 91½, par. 1—1 *et seq.*), which provided for discharge upon the order of the superintendent of the hospital where the acquitted was placed. Ill. Rev. Stat. 1975, ch. 91½, par. 10—4.

Effective August 1, 1977, section 5—2—4 was amended to provide that in the event of such acquittal a hearing was to be held under the Mental Health Code of 1967 (Ill. Rev. Stat. 1977, ch. 91½, par. 1—1 *et seq.*) to determine whether the defendant was in need of mental treatment. If found to be in need of mental treatment the court was to enter an order so specifying. The initial order for admission is for an indefinite period of time subject to the provision that such period of commitment shall not exceed "the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity." (Ill. Rev. Stat.

1977, ch. 38, par. 1005—2—4(b).) The statute provides
that when the defendant is no longer in need of mental
treatment, or in the event that he continues to be in
need of mental treatment, release or discharge is
appropriate, under specified conditions, the superin-
tendent must give written notice not less than 30 days
prior to such release to the State's Attorney of the county
where the criminal proceeding took place and to the court
which found the defendant mentally ill and in need of
mental treatment. (Ill. Rev. Stat. 1977, ch. 38, par.
1005—2—4(d).) The statute further provides:

> "(h) If the court finds that the defendant is no longer
> in need of mental treatment it shall order the superin-
> tendent to discharge or release the defendant.
> (i) If the court does not so find, it may order the
> superintendent not to discharge or release the defend-
> ant, or may order discharge or release under such
> conditions *** which reasonably assure the defendant's
> satisfactory progress ***.
> (j) The court may subsequently modify the condi-
> tions for release or discharge of a defendant who con-
> tinues to be in need of mental treatment, including
> remanding him to a facility, when in its judgment such
> modification is appropriate to reasonably assure either the
> defendant's satisfactory progress in treatment or his safety
> and the safety of others. ***" Ill. Rev. Stat. 1977, ch. 38,
> pars. 1005—2—4(h), (i), (j).

Defendant contends that although the hearing was
held, and the order appealed from entered, subsequent to
the effective date of the amendment of section 5—2—4,
the circuit court erred in applying the amended provisions.
He argues that those provisions became effective subse-
quent to the date of the commission of the offenses of
which he was acquitted and that the retroactive applica-
tion of the changes violated established principles of
statutory construction. He contends further that the
provision for judicial review of the Department's decision
to release defendant deprived him of equal protection of
the law. He argues that had he been involuntarily com-

mitted on any other basis, he would be subject to discharge when, in the judgment of the Department, he no longer was subject to involuntary admission (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 3—902), and that the distinction creates an unreasonable classification violative of the equal protection clauses of the Illinois and the United States constitutions.

We consider first defendant's contention that the circuit court erred in applying the provisions of section 5—2—4, as amended effective August 1, 1977. We do not agree. As the court said in *Sipple v. University of Illinois* (1955), 4 Ill. 2d 593, 597:

> "It is well established that a statute is not retroactive just because it relates to antecedent events. (*Reynolds v. United States,* 292 U.S. 443; *Cox v. Hart,* 260 U.S. 427.) As stated by Judge Briggle in *United States v. Bradley,* 83 Fed. 2d 483, 484, 'Authority is abundant to support the proposition that an act is not retroactive merely because it involves facts which antedate the passage of the act.' "

The occurrence which invoked the provisions of the statute was not the commission of the offenses with which defendant was originally charged; the statute was invoked by his acquittal by reason of insanity. Furthermore, the amendment did not affect any right which defendant had acquired as of the effective date of the change (*People v. Anderson* (1973), 53 Ill. 2d 437), and the circuit court correctly applied the statute as amended.

We consider next defendant's contention that the statutory provision for judicial review of the Department's decision to release him deprived him of equal protection of the law. We have examined the authorities cited in support of the argument (*Baxstrom v. Herold* (1966), 383 U.S. 107, 15 L. Ed. 2d 620, 86 S. Ct. 760; *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845; *Reynolds v. Sheldon* (1975), 404

F. Supp. 1004; *Wilson v. State* (1972), 259 Ind. 375, 287 N.E.2d 875; *Humphrey v. Cady* (1972), 405 U.S. 504, 31 L. Ed. 2d 394, 92 S. Ct. 1048) and find that they did not involve the precise issues presented here. Simply stated, the first question presented is whether defendant, acquitted by reason of insanity and committed under the provisions of section 5–2–4 of the Unified Code of Corrections, was deprived of equal protection because the statute provides for judicial review of the decision of the Department to release him, whereas if he were committed under the provisions of the Mental Health Code, no such judicial review would be required. The second question presented is whether an unreasonable classification was created because the statute provides for such review only during the maximum period of time that defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole, had he been convicted of, and received the maximum sentence for, the most serious crime for which he had been acquitted by reason of insanity.

We find persuasive the holdings of the courts of appeals in *United States v. Ecker* (D.C. Cir. 1976), 543 F.2d 178, and *Powell v. Florida* (5th Cir. 1978), 579 F.2d 324, involving, respectively, statutes of the District of Columbia and Florida. The courts of appeals rejected the contention made by defendant here, holding that the dangerousness demonstrated by the acts committed in the perpetration of the criminal offenses justified the additional safeguard provided in the statutory provisions for judicial review. We agree, and hold that the requirement for the hearing does not serve to deprive the defendant of equal protection of the law.

In support of his contention that the statute creates an unreasonable classification, defendant argues that the maximum sentence period is irrelevant to the reason for his commitment and that it is irrational to require judicial review only until he is eligible for parole. As the court

said in *Fujimura v. Chicago Transit Authority* (1977), 67 Ill. 2d 506:

"Traditional equal protection analysis, applicable in this case, requires us to determine whether the classification of defendants bears a rational relationship to a legitimate State purpose. (*S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76.) 'A statute classifying persons or objects is not unconstitutional because it affects one class and not another, provided that it affects all members of the same class alike and provided that the classification is not arbitrary, but based upon some substantial difference in circumstances properly related to the classification.' " 67 Ill. 2d 506, 512.

The Governor's Commission For Revision Of The Mental Health Code Of Illinois (1977), after discussing *United States v. Ecker* and the statute there involved (D.C. Code sec. 24—301(d)(1) (1973), noted that the provision allowing for judicial review was based on previous determination of manifested dangerousness, and said:

"[T]he period of such judicial supervision should be related to the seriousness of the act involved as expressed in the sentence authorized by statute. Thus, under its recently enacted proposal, the period of judicial review terminates when the defendant would have become eligible for parole had he been sentenced to the maximum period provided by law for the offense proved." (Governor's Commission For Revision Of The Mental Health Code Of Illinois 47 (1977).)

Apparently the General Assembly found this to be persuasive, and as we said in *Garcia v. Tully* (1978), 72 Ill. 2d 1:

"Whether the course chosen by the General Assembly to achieve a desired result is either wise or the best means available is not a proper subject of judicial inquiry. (*Schreiber v. County of Cook* (1944), 388 Ill. 297; *Stewart v. Brady* (1921),

300 Ill. 425.) If there is a reasonable basis for the classification and it bears a reasonable and proper relation to the purposes of the Act, the classification is not unreasonable. *Williams v. City of Chicago* (1977), 66 Ill. 2d 423; *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572; *Crews v. Lundquist* (1935), 361 Ill. 193." (72 Ill. 2d 1, 10-11.)

We hold that the provision does not violate the equal protection clause of either the Constitution of the United States or the Illinois Constitution of 1970.

The Department contends that the circuit court was without jurisdiction to order the implementation of a specific court-designed treatment plan for defendant. It argues that the circuit court's order violates the doctrine of separation of powers, that the powers of the court are limited to determining whether or not the discharge should be granted, and that the General Assembly has delegated to the Department the exclusive authority to make clinical decisions concerning defendant's treatment. It argues, further, that the circuit court's .order directing the Department to issue a memorandum to all its units setting forth the procedures and regulations governing the admission and treatment of persons committed to its care following an acquittal by reason of insanity was without any basis in law or equity, and is therefore void.

In support of its contention that the circuit court was without jurisdiction to order the implementation of a specific court-designed treatment plan for defendant, the Department, citing *People ex rel. Pauling v. Misevic* (1964), 32 Ill. 2d 11, and *People v. Nunes* (1965), 58 Ill. App. 2d 55, argues that the power of the courts over insane persons .is derived only through legislative enactments and must be exercised in strict conformity with the governing statutes. It argues that the circuit court was authorized to choose between only those dispositions expressly authorized in the statute.

The rationale of the cases upon which *Pauling* and *Nunes* relied was that the State, as *parens patriae*, exercised the same control over insane persons as was formerly exercised in England by its king. The English courts of chancery, in the absence of statutory enactment, did not have jurisdiction over insane persons. When those earlier cases were decided, the Illinois Constitution provided that the circuit court had "original jurisdiction of all causes in law and equity" (Ill. Const. 1870, art. VI, sec. 12), and it was held that the equity jurisdiction of the court did not, in the absence of legislative action, extend to insane persons. The Constitution of 1970 provides that the "Circuit Courts shall have original jurisdiction of all justiciable matters***" (Ill. Const. 1970, art. VI, sec. 9), and the rationale of *Pauling* is no longer applicable.

Having determined that the circuit court had jurisdiction, we consider whether in entering its order it correctly construed the statute. Section 5—2—4(b) provides in pertinent part:

"Not more than 30 days after admission and every 60 days thereafter so long as the initial order for admission remains in effect, the superintendent shall file a treatment plan with the court. Such plan shall include an evaluation of the defendant's progress and the extent to which he is benefiting from treatment." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(b).)

Section 5—2—4(i) provides that if the court does not find, following a hearing, that the defendant is no longer in need of mental treatment, "it may order the superintendent not to discharge or release the defendant, or may order discharge or release under such conditions proposed by the superintendent or imposed by the court which reasonably assure the defendant's satisfactory progress in treatment or habilitation and for the safety of the defendant and others. The court shall consider terms, conditions and supervision which may include, but need not be limited to, notification and discharge of the person to the

custody of his family, community adjustment programs, periodic checks with legal authorities and the Department of Mental Health and Developmental Disabilities, and out-patient care and utilization of local mental health facilities." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(i).) There would appear to be little reason for the inclusion of the foregoing statutory provisions if it were not for the purpose of enabling the circuit court to monitor the progress of the treatment being rendered a defendant acquitted by reason of insanity.

The Department argues that "under the statute the circuit court may only (1) modify its original order, or (2) order the patient discharged." We have searched the Department's brief in vain for an explanation of what modification is permissible under the statute and the nature of the alleged statutory limitations on the power to modify the original order. We are not confronted here with an assertion by the Department that its facilities do not enable it to conform with the order, or the contention that compliance with the order will not be beneficial to defendant. Simply stated, its position seems to be that the court is without authority, either by reason of its lack of statutory authority, or by reason of the doctrine of separation of powers, to direct the Department as to the manner in which it is to perform its duties. We do not agree. The record amply supports the circuit court's findings and demonstrates the wisdom of providing for judicial review of the treatment of those acquitted by reason of insanity, and we hold that the court did not err in the entry of its order.

We consider next the contention of the Department that the order of the circuit court directing it to publish a memorandum to all its units regarding the admission and treatment of persons committed to its care following an acquittal by reason of insanity was without any basis in law and void *ab initio*. We need not and do not consider the question whether the circuit court had jurisdiction to

require the Department to issue this type of memorandum. The issue before the circuit court was the adequacy of the course of treatment furnished defendant. The scope of the inquiry, as delineated by the statute, extends only to this defendant and not to the general practices and procedures of the Department. We hold, therefore, that in entering that portion of its order the court erred.

For the reasons stated, the order directing the Department to issue the memorandum is vacated and in all other respects the order of the circuit court is affirmed.

*Affirmed in part and*
*vacated in part.*