*In re* ESTATE OF FRANCES A. MEARS, Deceased.—(Ruth Koontz Cordis, Petitioner-Appellant, *v.* Gordon Brady *et al.*, Respondents-Appellees.)

Fourth District No. 4—82—0230

Opinion filed December 13, 1982.—Rehearing denied January 19, 1983.

Jack C. Vieley, of Peoria, for appellant.

Dunn, Brady, Goebel, Ulbrich, Morel, Kombrink & Hundman, of Bloomington (William Goebel, of counsel), for appellee Illinois Wesleyan University.

James C. Wollrab, of Costigan & Wollrab, of Bloomington, for appellees Hubert Ellis heirs.

Robert M. Travers, of Fellheimer, Fellheimer, O'Dell & Travers, Ltd., of Pontiac, for appellees Mary Arthur heirs.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Frances A. Mears died testate and her will was admitted to probate in the circuit court of Livingston County. The principal beneficiary of that will is Illinois Wesleyan University of Bloomington, which receives all of the residue of the substantial estate after the payment of a number of specific monetary legacies. The testator was widowed and childless and her heirs were 53 known nieces and nephews of the whole and half blood and descendants of other such nieces

and nephews as predeceased her. Other heirs, if any, were unknown.

Within the time limited by law (Ill. Rev. Stat. 1979, ch. 110½, par. 8—1(a)) the petitioner, an heir and legatee of the testator, filed a petition to contest the validity of the will and named therein as respondents all the heirs and legatees, but did not name as a respondent the executor to whom letters had issued. In the body of the petition it was alleged that the executor had been nominated in the will and that letters had issued to him.

The executor filed a special and limited appearance for the purpose of contesting the jurisdiction of the circuit court. It alleged the failure to name him as a party respondent and that the time for filing a proper petition had expired. Illinois Wesleyan University, joined by several of the heirs, filed a motion to dismiss on the same grounds.

The circuit court of Livingston County held a hearing on the appearance and the motion and dismissed the petition with prejudice, holding that the failure to join the executor deprived it of jurisdiction. The petitioner appeals and we reverse.

The trial court placed great emphasis on a portion of section 8—1(a) of the Probate Act of 1975. That section, after limiting the period for filing a petition to contest the validity of a will, provides: "The representative, if any, and all heirs and legatees of the testator must be made parties to the proceeding ***." (Ill. Rev. Stat. 1979, ch. 110½, par. 8—1(a).) The court stressed the word "must" and held that its jurisdiction derived from the statute. Undoubtedly the statute mandates the joinder of the representative, but the court was in error in determining that its jurisdiction flowed from the statute.

Jurisdiction is the life-spirit of the judiciary and is just as difficult of description as is the life-force of *homo sapiens*. However, while the origin of the life-force of humans remains a divine mystery, the origin of jurisdiction is secular and may be traced. A brief sketch of its origin and subsequent career in this State may be helpful in illuminating the question presented in the case at bar.

Let us accept for purposes of discussion a simplistic definition of jurisdiction as being the power to adjudicate. In the history of this State that power has found itself engaged in a tug-and-pull imbroglio between the courts and the legislature.

The Illinois Constitution of 1818 represented a legislative dominance of the matter. Article IV, section 4, of that document provided in part: "[T]he said justices [of the supreme court], respectively, shall hold circuit courts in the several counties, in such manner and at such times, and shall have and exercise such jurisdiction as the general assembly shall by law prescribe."

The legislature moved at an early date to implement this provision. Section 26 of "An Act regulating and defining the duties of the justices of the supreme court," approved March 31, 1819, provided:

"And be it further enacted, That the said circuit courts shall be holden at the respective court-houses of said counties; and the said justices respectively, in their respective circuits, shall have jurisdiction over all causes, matters, and things at common law and in chancery, arising in each of the counties in their respective circuits, where the debt or demand shall exceed the sum of twenty dollars." 1819 Ill. Laws 380.

Article IV, section 4, of the Illinois Constitution of 1818 provided for the appointment of the justices of the supreme court and judges of the inferior courts by the legislature. After the appointment of circuit judges, the same strictures on jurisdiction were placed on them by the legislature. Section 18 of "An Act regulating the Supreme and Circuit Courts. In force July 1, 1829" provided:

"The said circuit courts shall be holden at the respective court houses of said counties, and the said judges respectively, in their respective circuits shall have jurisdiction over all matters and suits at common law and in chancery, arising in each of the counties in their respective circuits, where the debt or demand shall exceed twenty dollars." Rev. Laws Ill. 1833, at 151-52.

The supreme court took an exceedingly expansive view of this grant of jurisdiction and stated:

"The Circuit Courts are the only superior courts in the State, that possess original and unlimited jurisdiction. They exercise, within their respective counties, all the powers and jurisdiction of the courts of King's Bench and Common Pleas in England." *Beaubien v. Brinckerhoff* (1840), 3 Ill. (2 Scam.) 269, 273.

Here was the nativity of the concept that jurisdiction flowed from the legislature through its statutory enactments. This was preserved in the Constitution of 1848 which to a large extent curbed Judge Lockwood's "original and unlimited" idea of jurisdiction set forth in *Beaubien*. Article V, section 5, of the Constitution of 1848 granted the supreme court original jurisdiction in a limited number of cases and appellate jurisdiction in all others. Section 8 was restrictive as to the circuit courts and incorporated the "law and equity" concept found in the early statutes:

"[S]aid courts shall have jurisdiction in all cases at law and equity, and in all cases of appeals from all inferior courts." Ill. Const. 1848, art. V, sec. 8.

So matters stood until the Constitution of 1870. That document took a cautious step forward by conferring "original" jurisdiction in law and equity on the circuit courts, but declined *Beaubien's* "unlimited." It stated:

> "The circuit courts shall have original jurisdiction of all causes in law and equity, and such appellate jurisdiction as is or may be provided by law." Ill. Const. 1870, art. VI, sec. 12.

As happened in 1840 with *Beaubien,* the supreme court took an equally expansive view of "original" jurisdiction and asserted in *Myers v. People* (1873), 67 Ill. 503, 509, "The legislature, therefore, has no power to abridge the original jurisdiction of the circuit court."

The appellate court stated the concept more poetically in *Ide v. Sayer* (1888), 30 Ill. App. 210, 216-17:

> "The jurisdiction of the County Court does not resemble that of the Circuit Court, which is original 'of all cases in law and equity' (Sec. 12, Art. 6, Const.), undefined, general, like space, ending nowhere, and embracing all that is."

The law became well settled that the legislature could not infringe on the "law and equity" jurisdiction of the circuit courts. However, power was retained in the legislature to regulate proceedings which did not have their ancestry in the traditional forms. A concise statement is found in *People v. Graw* (1936), 363 Ill. 205, 208, 2 N.E.2d 71, 72-73:

> "By the constitution circuit courts have jurisdiction of all causes in law and equity. The term 'all causes in law and equity' includes every claim or demand in a court of justice which was known at the adoption of the constitution as an action at law or a suit in chancery, and also all actions since provided for which involve personal or property rights of the same nature as those previously enforced by actions at law or in equity. It does not apply to special statutory proceedings involving rights and providing remedies not of a kind previously existing at law or in equity."

After the adoption of the Constitution of 1870, the legislature exercised its retained power in a variety of ways. It provided jurisdiction over matters which had no roots in traditional law and equity, *e.g.*, probate, and even at times legislated without objection on matters which were traditionally part of inherent chancery jurisdiction; *e.g.*, section 1 of "An Act to revise the law in relation to injunction" (Ill. Rev. Stat. 1874, ch. 69, par. 1), which conferred on the circuit courts and the circuit judges the power to grant writs of injunction. The bench and bar fell into the habit of looking to the statutes as a

source of jurisdiction and largely ignoring the other sources.

A revolution was wrought, almost without a murmur, by the Judicial Article of 1962, effective January 1, 1964. That provided:

"The Circuit Court shall have unlimited original jurisdiction of all justiciable matters, and such powers of review of administrative action as may be provided by law." (Ill. Const. 1870, art. VI, sec. 9.)

It is noteworthy that this is the exact language employed by the supreme court in *Beaubien* 122 years before. Now for the first time in the history of the State jurisdiction was out of the hands of the legislature except for administrative review and instead of looking for a statutory *fiat*, the bench and bar were required to determine the nature of a "justiciable matter." Grappling with this problem is still going on and its very amorphous characteristics indicate that an unequivocal answer will not soon be found. It may be similar to the court's statement in *Ide* concerning law and equity jurisdiction: "undefined, general, like space, ending nowhere, and embracing all that is." For a general discussion of the revolution see Fins, *Re-Examination of "Jurisdiction" in Light of New Illinois Judicial Article*, 53 Ill. B.J. 8 (1964).

Our research has revealed no cases decided on the question of jurisdiction under the amendment dealing with the "unlimited" language. However, the word had only a short tenure since it was eliminated by the Constitution of 1970. That document provided:

"Circuit courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office. Circuit Courts shall have such power to review administrative action as provided by law." (Ill. Const. 1970, art. VI, sec. 9.)

We believe that no substantive change was intended from the 1962 version. A review of the proceedings of the 1969 Constitutional Convention reveals that as originally submitted, the draft conferred "unlimited original" jurisdiction, but that the word "unlimited" was eliminated by the Committee on Style and Drafting. The Committee's version was adopted by the Convention without comment or debate. Doubtless the exceptions set forth in the same section mandated the elimination of "unlimited."

So a full progression has been made from the purely legislative concept of jurisdiction embodied in the 1818 Constitution to the plenary concept now in force under the 1970 Constitution. The supreme court has held on several occasions that the circuit court derives its

jurisdiction directly from the constitution and not from any statute or pleading. (*People v. Valdez* (1980), 79 Ill. 2d 74, 402 N.E.2d 187; *People v. Gilmore* (1976), 63 Ill. 2d 23, 344 N.E.2d 456.) However, as pointed out in the Fins article, the legislature may still impose substantive conditions precedent to the exercise of jurisdiction. While this may sometimes erroneously be called a lack of jurisdiction, it is in reality an inability to exercise jurisdiction because the court cannot waive the condition.

 This too-lengthy excursus into history has been made only to indicate that the bench and bar are by nature traditionalists and that with them old notions die hard. No longer do we seek statutory justification for the exercise of jurisdiction; rather the inquiry must be whether there exists a justiciable controversy, and if so, are there any statutory conditions precedent to judicial intervention.

As applied to the instant case, the inquiry yields a ready answer. Prior to 1964 a will contest was a creature of statute in this State and hence jurisdiction was dependent upon strict compliance with the statute. (*Selden v. Illinois Trust & Savings Bank* (1909), 239 Ill. 67, 87 N.E. 860.) After 1964 it became a justiciable matter, and the only condition precedent to the exercise of jurisdiction is that it be filed within the time limited by statute after the admission of the will to probate. (Ill. Rev. Stat. 1979, ch. 110½, par. 8—1(a).) It is uncontroverted that the petition was filed within the statutory period in the instant case. The circuit court then had jurisdiction. The cases cited by the parties which antedate the Constitution of 1970 are of no assistance here, although they were valid law for their time and place.

Rather, we are of the opinion that the instant case is controlled by *Watt v. Farmers State Bank & Trust Co.* (1979), 71 Ill. App. 3d 455, 389 N.E.2d 947. In that case a petition was timely filed attacking the validity of a will executed May 20, 1966. No mention was made of a codicil executed February 15, 1969. Motions to dismiss were allowed for various reasons, and nearly one year after the expiration of the six-month limitation period set forth in section 8—1(a) of the Probate Act of 1975, a second amended complaint was filed which for the first time mentioned the codicil and asked that both the will and the codicil be set aside. The codicil nominated a different executor but otherwise republished and reaffirmed the will. The trial court dismissed the second amended complaint with prejudice, holding that the codicil was not attacked within the limitations period, and since the codicil reaffirmed the will, any impropriety in the execution of the will was not then subject to attack. The appellate court reversed, holding that the circuit court acquired jurisdiction upon the timely filing of the original

complaint and that the matter of the codicil could be raised by amendment under section 46(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46(2)).

█ In like manner in the case at bar, since jurisdiction had attached upon the timely filing of the petition, section 46 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 46), now section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—616) controls. Section 1—6 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 1—6) with certain exceptions not pertinent here, makes the Civil Practice Act applicable to proceedings in probate.

Subparagraph (1) of section 46 permits the joinder of necessary parties at any time before final judgment. It cannot be seriously contended that under the language of section 8—1(a) of the Probate Act of 1975 the executor is not a necessary party. Subparagraph (2) of section 46 provides that an amended pleading will relate back, if the original pleading were timely filed and the same transaction is involved. Obviously both sections are satisfied in the instant case.

Respondents contend that *Watt*, decided under subparagraph 46(2), has no application here, and if section 46 is to have any application, it must be under subparagraph (4) and petitioner has not complied with the conditions therein set forth. The pertinent part of subparagraph (4) states: "A cause of action *against* a person not originally named a defendant is not barred by lapse of time ***." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 110, par. 46(4).) A will contest is not an action against any person to secure a personal judgment but is a *quasi in rem* proceeding simply to set aside the will. (*Nupnau v. Hink* (1965), 33 Ill. 2d 285, 211 N.E.2d 379.) Subparagraph (4) therefore has no application. It is interesting to note in passing that although *Nupnau* was decided under the 1870 Constitution and the prior provisions of the Probate Act (Ill. Rev. Stat. 1961, ch. 3, pars. 90, 91), nevertheless, the supreme court held that the failure to join all of the heirs as parties defendant did not defeat the jurisdiction of the court.

Respondents also rely heavily on *Shriners Hospitals v. First National Bank* (1981), 101 Ill. App. 3d 626, 428 N.E.2d 751. We find that authority inapposite. It was in effect an attempt by a respondent to assert a counterclaim as an original action when the petitioner had taken a voluntary nonsuit after the limitations period had expired. Furthermore, the court continued to view section 8—1 of the Probate Act as jurisdictional rather than as a condition precedent to the exercise of jurisdiction.

1140

The order of dismissal entered by the circuit court of Livingston County is therefore reversed and the cause is remanded to that court with directions to allow the petitioner to amend her petition to include the executor as a party respondent and for such further proceedings as may then be appropriate and required.

Reversed and remanded with directions.

MILLS and TRAPP, JJ., concur.