*In re* COMMITMENT OF STEVEN GUY (The People of the State of Illinois, Petitioner-Appellee, *v.* Steven Guy, Respondent-Appellant).—STEVEN GUY, Petitioner-Appellant, *v.* MICHAEL BELLETIRE, Acting Director of the Illinois Department of Mental Health and Developmental Disabilities *et al.*, Respondents-Appellees.

First District (1st Division) Nos. 83—2851, 84—152 cons.

Opinion filed July 9, 1984.

Mark J. Heyrman, of Edwin F. Mandel Legal Aid Clinic, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Maureen A. Harton, Assistant State's Attorneys, of counsel), for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

The present case involves two separate appeals which, on the motion of petitioner, Steven Guy, were consolidated for review. The first appeal is from a judgment of the circuit court revoking petitioner's "good-time credit" and extending his period of confinement as an insanity acquittee for a period of 15 months. The second appeal is from a subsequent judgment of the trial court denying Steven Guy's petition for a writ of *habeas corpus*.

The record reveals that petitioner has been continuously con-

fined since January 17, 1974, when he was arrested on charges of murder. On May 11, 1978, he was acquitted of those charges by reason of insanity and, shortly thereafter, involuntarily committed to the custody of the Illinois Department of Mental Health and Developmental Disabilities (DMHDD) pursuant to section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4). At issue in this consolidated appeal is whether the trial court erred in extending the period of petitioner's confinement as an insanity acquittee for an additional 15 months beyond the period provided by section 5—2—4(b) of the Unified Code of Corrections. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(b).) The trial court imposed this extension following a hearing, basing its decision on a finding that Guy had been involved in several altercations during his confinement by the DMHDD which justified the revocation of 15 months of accrued good-time credit. We reverse.

The commitment, treatment, and discharge of persons acquitted by reason of insanity are governed by section 5—2—4, which provides in relevant part:

> "(b) The admission, detention, care, treatment or habilitation, transfer, review proceedings, and discharge of the defendant after such order shall be under the Mental Health Code of 1967, except that the initial order for admission of a defendant acquitted of a felony by reason of insanity shall be for an indefinite period of time; provided, however, that such period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity." Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(b).

In the present case, petitioner initially filed a motion with the circuit court on December 7, 1982, asking the court to establish a final release date pursuant to section 5—2—4(b). After briefing, the court entered an order which stated that "[petitioner's] commitment pursuant to *** section 1005—2—4 shall expire no later than August 26, 1983." While not challenging the accuracy of the calculation embodied in the circuit court's original order, on August 17, 1983, the State moved to modify that order and asked the court to revoke all good-time credit and extend petitioner's commitment based upon petitioner's "bad conduct." After a hearing, the court granted the State's motion, purportedly under authority granted to the court by

section 5—2—4 (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4),[1] thereby extending petitioner's commitment to November 26, 1984.

We believe the trial court erroneously concluded that petitioner had earned good-time credits during his period of commitment which can later be revoked by subsequent bad conduct. Section 5—2—4 nowhere provides for the revocation of good-time credits from insanity acquittees. On the contrary, the statute indicates that good-time credit is relevant only as a variable in computing the initial commitment order setting an insanity acquittee's maximum period of confinement. Thus, good-time credits are not earned by an insanity acquittee during the course of his confinement, but rather, the maximum period of confinement is merely computed by referring to the existing sentencing scheme and good-time credit provisions contained in the criminal code. An insanity acquittee's subsequent conduct cannot alter this statutory maximum.

This construction of section 5—2—4 is supported by the recent decision of our supreme court in *People v. Tanzy* (1983), 99 Ill. 2d 19, 457 N.E.2d 390. There the State argued that an insanity acquittee is not entitled to compensatory good-time credit in calculating the maximum period of confinement under section 5—2—4 because compensatory good-time credit depends on conduct during confinement. The supreme court rejected this argument and held that a trial court must take into account both statutory and compensatory good-time credits in calculating an insanity acquittee's maximum period of confinement, because for inmates within the Department of Corrections eligibility for both types of credit is no longer dependent on "meritorious activity by the inmate." (99 Ill. 2d 19, 23.) In so doing, the court noted that an insanity acquittee's commitment period must be fixed by the trial court upon acquittal and interpreted section 5—2—4(b) as establishing a maximum period which "will represent the outer limit of the defendant's possible commitment. The defendant cannot be held [as an insanity acquittee] beyond that maximum." (99 Ill. 2d 19, 21.) Thus, the court recognized that good-time credit is relevant only in setting an initial commitment period, and that an insanity acquittee's good-time credits are not revocable because once the limit has been set he cannot be held beyond that maximum. The court also implicitly recognized that ac-

---

[1] Pursuant to *People v. Valdez* (1980), 79 Ill. 2d 74, 402 N.E.2d 187, the version of section 5—2—4 in effect at the time of Guy's commitment as an insanity acquittee governs his subsequent treatment and release. The language of section 5—2—4 at issue here has not materially changed.

tual conduct during commitment is irrelevant to awarding good-time credits because the maximum length of the commitment period must be set before the period has even begun.

This construction is further bolstered by the total lack of any statutory provisions for revoking an insanity acquittee's good-time credits. Section 5—2—4 remands insanity acquittees to the custody of the DMHDD but nowhere in the statute has the DMHDD been empowered to enact rules, regulations and procedures for revoking good-time credits. (Compare Ill. Rev. Stat. 1983, ch. 38, par. 1003—6—3, authorizing the Department of Corrections to enact rules and regulations for early release of inmates.) Not surprisingly, the DMHDD has enacted no such rules or regulations and has, in fact, never attempted to revoke petitioner's good-time credits or those of any other insanity acquittee. Clearly, if our legislature had wished for insanity acquittees to earn good-time credits and to have these credits revocable for bad conduct, some provision in the criminal code would spell out standards and procedures for such revocation.

The absence of any standards or procedures for revoking an insanity acquittee's good time is further revealed by the confusion exhibited in the proceedings below. The trial court could not decide whether the case was criminal or civil in nature. What the State had to prove was never established. Both the trial court and the State insisted that the Department of Corrections' procedures for revoking good time were inapplicable to insanity acquittees, and the court implied it was revoking petitioner's good-time credit for violating rules of the DMHDD. However, Guy was never charged with violating any DMHDD rules, nor was it ever proved that he ever violated such rules. Our review of the proceedings below reveals that the trial court improvised a procedure for revoking good-time credits from insanity acquittees where one was neither in existence nor authorized under Illinois law.

We believe that the explicit language of section 5—2—4, and our supreme court's analysis of this statute in *Tanzy*, when coupled with the absence of any statutory authorization for revoking good-time credits of insanity acquittees, and the lack of any administrative regulations as promulgated by the DMHDD setting standards and procedures for revoking good-time credits, all mandate a finding that good-time credits of insanity acquittees are not subject to revocation.

In view of the foregoing, we reverse the judgments of the trial court revoking petitioner's good-time credit and denying the petition for a writ of *habeas corpus*. The State concedes that petitioner's ini-

tial release date of August 26, 1983, was correctly calculated and remand is therefore unnecessary, since this court has the authority to reverse the trial court's order (73 Ill. 2d R. 615(b)(1)). We therefore conclude that petitioner is entitled to his immediate release unless his civil commitment is sought.

Reversed.

CAMPBELL and O'CONNOR, JJ., concur.