THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALE LARSON, Defendant-Appellant.

First District (1st Division)   No. 83—0609

Opinion filed April 15, 1985.

James J. Doherty, Public Defender, of Chicago (Karen S. Szpajer, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Timothy J. Joyce, and John L. Malevitis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Dale Larson, an insanity acquittee, appeals from the judgment and order of the circuit court of Cook County utilizing the factors in aggravation in the extended-term statute (Ill. Rev. Stat., 1978 Supp., ch. 38, pars. 1005—8—2, 1005—5—3.2(b)(2)) to set his maximum period of criminal commitment at 80 years less credit for good behavior, pursuant to section 5—2—4(b) of the Unified Code of Corrections. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(b).) Both defendant and the State now contend that the trial court erred in determining his maximum period of commitment. Defendant also contends that the commitment period constituted improper punishment and that the trial court's determination violated his rights to equal protection and due process of the law.

In a bench trial it was stipulated that on November 21, 1978, defendant's mother and stepfather were stabbed to death inside their home, which was then set on fire. Defendant, who lived with them, was arrested 11 days later while driving a stolen automobile. He later admitted stabbing the victims and setting fire to the house. Defendant was found not guilty of theft and two counts of murder by reason of insanity. After holding a hearing on whether defendant was in need of further mental treatment, the court committed him to the Depart-

ment of Mental Health and Developmental Disabilities (DMHDD) for an indefinite period not to exceed a maximum of 80 years, less credit for good behavior and time served. See Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(b); *People v. Thiem* (1980), 82 Ill. App. 3d 956, 403 N.E.2d 647.

In a previous appeal, defendant contested the propriety of the commitment order. This court remanded the cause in a Rule 23 order entered on October 28, 1982, directing the trial court to clarify its basis for setting the maximum commitment period. On remand, the trial court indicated that he believed that section 5—2—4(b) allowed him, in determining the maximum commitment period, to consider both the facts of the case and the factors in aggravation in the extended-term statute. The court then reaffirmed the 80-year commitment order because the murders were accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty" under the extended term statute. See Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(2).

■ Initially, we consider defendant's contention that the criminal commitment statute should be construed as requiring that the trial court, in setting the maximum commitment period, use only the 40-year maximum sentence for murder in section 5—8—1(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(1)).

In construing a statute, the court should look first and foremost to the terms of the statute as the best means of ascertaining the intent of the legislature. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475, 433 N.E.2d 674; *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139, 361 N.E.2d 585.) A court may not read a limitation into a statute which the legislature has not seen fit to enact nor may it, by subtle construction, alter the plain meaning of the words employed. *People ex rel. Pauling v. Misevic* (1964), 32 Ill. 2d 11, 15, 203 N.E.2d 393, *cert. denied* (1965), 380 U.S. 963, 14 L. Ed. 2d 154, 85 S. Ct. 1107; *People v. Javurek* (1976), 40 Ill. App. 3d 218, 220, 351 N.E.2d 897.

The commitment of persons acquitted by reason of insanity is governed by section 5—2—4(b), which provides in relevant part:

"that the initial order for admission of a defendant acquitted of a felony by reason of insanity shall be for an indefinite period of time; provided, however, that such period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of in-

sanity." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(b).

The terms of section 5—2—4(b) provide a formula for computing the maximum period of criminal commitment. (*In re Commitment of Guy* (1984), 126 Ill. App. 3d 267, 269, 466 N.E.2d 1252.) The term "maximum sentence" referred to in section 5—2—4(b) contemplates that the trial court must refer to the existing sentencing scheme in order to determine the most punitive sanction that could have been imposed for the most serious crime charged, which is then reduced by credit for good behavior. (*In re Commitment of Guy* (1984), 126 Ill. App. 3d 267, 269; *People v. Tanzy* (1982), 108 Ill. App. 3d 59, 60-61, 438 N.E.2d 922, *modified* (1983), 99 Ill. 2d 19.) When compared with the 80-year maximum sentence available under the extended-term statute, the 40-year maximum sentence under section 5—8—1 simply is not the "maximum sentence" that can be given under the section 5—2—4(b) formula. Moreover, nothing in the plain language of the statute indicates that the words "maximum sentence" are to be limited by the maximum sentence available under section 5—8—1 of the Unified Code of Corrections. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1.) In the event that the legislature had intended to impose such a limitation, it could have clarified this statute via express language to that effect. Absent any express intent to the contrary, we must read section 5—2—4(b) to be in accord with the ordinary use and meaning of its terms. *People v. Hampton* (1983), 121 Ill. App. 3d 273, 276, 459 N.E.2d 985.

*People v. Tedford* (1982), 109 Ill. App. 3d 195, 440 N.E.2d 329; *People v. Leppert* (1982), 105 Ill. App. 3d 514, 434 N.E.2d 21, *appeal denied* (1982), 91 Ill. 2d 576, relied on by defendant do not address the precise issue presented here. The courts in those cases had no occasion to consider the applicability of the extended term statute to section 5—2—4(b) since the factors in aggravation were not present under the facts of those cases.

We also reject the State's contention that the trial court should have determined defendant's maximum commitment period based on a maximum sentence of natural life. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(1).) Courts will not construe a statute in such a way as to render part of the statute a nullity. (*People v. Tarlton* (1982), 91 Ill. 2d 1, 5, 434 N.E.2d 1110.) The State's position would render superfluous that language in section 5—2—4(b) which automatically gives insanity acquittees credit for good behavior (*People v. Tanzy* (1983), 99 Ill. 2d 19, 457 N.E.2d 390; *In re Commitment of Guy* (1984), 126 Ill. App. 3d 267), because such credit is not permitted when a term of natural life is imposed. (See Ill. Rev. Stat., 1978

Supp., ch. 38, par. 1003—6—3(a)(2).) Moreover, use of a natural life sentence would undermine the legislative objective that a definite outer perimeter to defendant's commitment period be set at the time the initial commitment order is issued. (See *People v. Tanzy* (1983), 99 Ill. 2d 19, 21.) We find that a term of natural life is not a permissible "maximum sentence" under section 5—2—4(b).

■ Defendant next contends that the trial court's utilization of the extended-term statute constituted punishment because the statute was designed primarily to enhance the punishment of the guilty. Even if true, the fact that the maximum period of criminal commitment is determined by reference to the extended-term statute does not mean that defendant's commitment period constitutes a "sentence" or punishment. (See *People v. Tedford* (1982), 109 Ill. App. 3d 195, 197, 440 N.E.2d 329; *Raimondo v. Pavkovic* (1982), 107 Ill. App. 3d 226, 437 N.E.2d 712, *appeal denied* (1982), 92 Ill. 2d 573.) The purpose of criminal commitment is the treatment of the acquittee's mental illness and the length of confinement is limited to the time necessary for his recovery. (*People v. Tanzy* (1983), 99 Ill. 2d 19, 21; see also, *Jones v. United States* (1983), 463 U.S. 354, 370, 77 L. Ed. 2d 694, 709, 103 S. Ct. 3043, 3052.) Utilization of the extended-term statute does not change the rehabilitative focus of criminal commitment. It also does not alter the indefinite character of the commitment period, since defendant may be released anytime he regains his sanity. The trial court's actions simply provided for a potentially longer period in which defendant could receive treatment subject to judicial review. See *People v. Valdez* (1980), 79 Ill. 2d 74, 86, 402 N.E.2d 187.

Moreover, the trial court's characterization of defendant's conduct as "exceptionally brutal or heinous behavior indicative of wanton cruelty" did not indirectly punish defendant, who was not criminally responsible for that conduct. Application of the extended-term statute is determined by the "offense" rather than by the extent or nature of defendant's participation (*People v. Gray* (1980), 87 Ill. App. 3d 142, 153, 408 N.E.2d 1150, *appeal denied* (1980), 81 Ill. 2d 604, *cert. denied* (1972), 405 U.S. 930, 30 L. Ed. 2d 804, 92 S. Ct. 983), and there is no question but that the offense in the present case was accompanied by conduct coming within the statutory language. Courts have recognized that the dangerousness manifested by an insanity acquittee's criminal acts justifies additional safeguards prior to his release from detention. See *People v. Gamble* (1983), 117 Ill. App. 3d 543, 545, 453 N.E.2d 839, *appeal denied* (1983), 96 Ill. 2d 562; *People v. Thiem* (1980), 82 Ill. App. 3d 956, 403 N.E.2d 647.

■ Defendant also argues that utilization of the extended-term

statute to set the maximum period of criminal commitment violates his right to equal protection of the laws where the legislature has prohibited such a length of commitment for a defendant found unfit to stand trial. (See Ill. Rev. Stat. 1981, ch. 38, pars. 104—25(g)(2) and 104—25(g)(4).) More specifically, he argues that unfit defendants and insanity acquittees are similarly situated with respect to involuntary noncivil commitment, because both groups contain persons whose commitment is predicated on a finding of mental illness, dangerousness and proof of a criminal act.

Where a statutory classification provides different procedures for treating two groups, equal protection requires only that the classification is based on a rational difference of condition or situation and that the classification is reasonably related to a legitimate governmental objective. The burden is on the person challenging the law to overcome the presumption of validity. *People v. Valdez* (1980), 79 Ill. 2d 74, 83-84, 402 N.E.2d 187; *Garcia v. Tully* (1978), 72 Ill. 2d 1, 377 N.E.2d 10.

In the case at bar, the different procedures are based on a substantial difference in circumstances. Where a criminal defendant has been found unfit to stand trial, the State retains a strong interest in bringing him to trial. However, the legislature has determined that the State's interest in determining whether an accused would become competent in the near future will not justify a commitment period which exceeds the maximum sentence he would have received had he been convicted and sentenced under section 5—8—1. (See Ill. Rev. Stat. 1981, ch. 38, par. 104—25(g)(4); see also *People v. Rink* (1983), 97 Ill. 2d 533, 543-44, 455 N.E.2d 64.) The unfit defendant's commitment period is limited because he may be brought to trial for his crimes if he recovers from his mental illness during the commitment period. Ill. Rev. Stat. 1981, ch. 38, par. 104—25(g)(1); *People v. Raseaitis* (1984), 126 Ill. App. 3d 600, 607, 467 N.E.2d 1098.

In contrast, an insanity acquittee must either be released or civilly committed at the conclusion of his criminal commitment period. (See *Raimondo v. Pavkovic* (1982), 107 Ill. App. 3d 226, 231-33, 437 N.E.2d 712.) Consequently the primary interest of the State in the commitment of the acquittee is the protection of society. *People v. Valdez* (1980), 79 Ill. 2d 74, 82-83, 402 N.E.2d 187; *People v. Javurek* (1976), 40 Ill. App. 3d 218, 220, 351 N.E.2d 897.

Because the unfit defendant faces the possibility of being tried and ultimately incarcerated for his crimes while the insanity acquittee does not, the legislature clearly had a rational basis for determining the unfit defendant's maximum period of involuntary commitment dif-

ferently from that of the insanity acquittee. The different procedures are substantially related to important governmental objectives and do not reflect discrimination against insanity acquittees. Our holding that the trial court's construction of section 5—2—4(b) does not violate defendant's equal protection rights "accords with the widely and reasonably held view that insanity acquittees constitute a special class that should be treated differently from other candidates for commitment." *Jones v. United States* (1983), 463 U.S. 354, 370, 77 L. Ed. 2d 694, 709, 103 S. Ct. 3043, 3052-53.

■ We also reject defendant's final contention that a due process violation occurs if an insanity acquittee is subject to an extended term of criminal commitment while the unfit defendant is not. The due process clause requires only that a statute is reasonably designed to accomplish constitutionally permissible objectives. (*People v. Raseaitis* (1984), 126 Ill. App. 3d 600, 608, 467 N.E.2d 1098; *People v. Burton* (1981), 100 Ill. App. 3d 1021, 427 N.E.2d 625, *appeal denied* (1981), 85 Ill. 2d 568.) Here, the primary objectives of section 5—2—4 were to insure that insanity acquittees would not be indeterminately institutionalized, while protecting society from the premature release of mentally ill persons who have been proved capable of dangerous acts. (*People v. Hampton* (1983), 121 Ill. App. 3d 273, 276-77, 459 N.E.2d 985; Governor's Commission for Revision of the Mental Health Code of Illinois, Report 3-4, 46-48 (1977).) The trial court's construction of section 5—2—4(b) clearly furthers the State's interest by allowing the courts to consider the dangerousness of the acquittee's acts in setting his maximum commitment period. It also provides a potentially longer period in which the court can monitor the treatment being rendered defendant and review any decision to release him. (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—2—4(b), (i); *People v. Valdez* (1980), 79 Ill. 2d 74, 85-86, 402 N.E.2d 187.) Utilization of the extended-term statute also protects the acquittee from the threat of indeterminate commitment because it provides a maximum sentence which can be mechanically applied by the trial court to set a definite outer limit to defendant's criminal commitment period. Defendant is also protected from unjustified institutionalization by provisions requiring periodic review of his condition by mental health professionals and release if he regains his sanity and is no longer dangerous to himself or society. (79 Ill. 2d 74, 85-86.) Accordingly, we find that the trial court's interpretation of section 5—2—4(b) as allowing utilization of the extended-term statute to determine the maximum period of criminal commitment reasonably balances and protects the interests of society and those of the insanity acquittee.

For the reasons stated, the judgment and order of the trial court are affirmed.

Affirmed.

McGLOON, P.J., and CAMPBELL, J., concur.