. THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN HAMPTON, Defendant-Appellant.

First District (5th Division)   No. 81—2219

Opinion filed December 30, 1983.—Rehearing denied February 16, 1984.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Adam A. Dabek, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

On August 19, 1981, following a bench trial, defendant was found not guilty by reason of insanity (Ill. Rev. Stat. 1975, ch. 38, par. 115—3) for the murder of Ruth Thieben and the attempted murder of Myrtle Miller (Ill. Rev. Stat. 1975, ch. 38, pars. 9—1(a)(2), 8—4) on June 17, 1976.

Immediately following the acquittal, the trial court, upon hearing evidence on the issue of commitment (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4), found the murder and attempted murder to be separate and distinct offenses committed at a different time and place for which consecutive sentence would be appropriate. The court further found the defendant subject to the involuntary admission of the Department of Mental Health and Developmental Disabilities (hereinafter Department) for a period of commitment "not to exceed 22 years 6 months from the [defendant's] arrest date of June 17th, 1976."

At issue on appeal is whether the trial court's commitment order of a period "not to exceed a maximum of 22 years and 6 months" was a proper application of section 5—2—4(a) of the Unified Code of Corrections. Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(b).

OPINION

A defendant found not guilty by reason of insanity is subject to involuntary commitment pursuant to section 5—2—4(b) of the Unified Code of Corrections. Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(b).

That portion of section 5—2—4(b) in effect at the time of defendant's acquittal (*People v. Valdez* (1980), 79 Ill. 2d 74, 402 N.E.2d 187) provided in pertinent part:

"*** that the initial order for admission of a defendant acquitted of a felony by reason of insanity shall be for an indefinite period of time; provided, however, *that such period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole had he been convicted of and received the maximum sentence for the most serious crime* for which he has been acquitted by reason of insanity." (Emphasis added.)

Defendant contends that the trial court erred in its determination of his maximum period of commitment (22 years 6 months). Defendant further contends that this period of commitment actually represents the trial court's effort to impose two consecutive 11-year 3-month periods of maximum commitment for both murder and attempted murder, since the court had previously found these offenses to be separate and distinct acts.

Defendant asserts that the finding of separate and distinct offenses was the trial court's initial error in the present case. He argues that his actions constituted a single psychotic episode, not subject to consecutive sentences or consecutive commitments, when he, while under the influence of alcohol and mental illness, strangled his apartment-mate Ruth Thieben, and tried minutes later to choke Myrtle Miller.

The State conversely contends that these offenses, although related in time, involved separate elements and separate victims, and therefore the imposition of consecutive sentences would have been proper had the defendant been found guilty of the offenses of murder and attempted murder. (*People v. Davis* (1974), 20 Ill. App. 3d 948, 956, 314 N.E.2d 723.) The State further contends that since these separate offenses would be subject to consecutive sentences, they should also be subject to separate periods of commitment. Thus, the maximum period of commitment, as imposed by the trial court, is proper.

■ Although we agree that the defendant's actions constituted two separate and distinct offenses, we disagree that section 5—2—4(b) authorizes the imposition of consecutive periods of commitment for these offenses.

It is a primary rule of statutory construction that the intention of the legislature should be ascertained and given effect. In so doing, courts look first to the terms of the statute. *People v. Robinson* (1982), 89 Ill. 2d 469, 475, 433 N.E.2d 674; *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139, 361 N.E.2d 585.

The terms of section 5—2—4(b) provide a maximum commitment formula "for *the most serious crime* for which he [defendant] has been acquitted by reason of insanity." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(b).) Since there is no rule of construction which empowers the court to declare that the legislature did not mean what the plain language of the statute imports (*American Buyers Club of Mt. Vernon, Illinois, Inc. v. Zuber* (1978), 57 Ill. App. 3d 899, 373 N.E.2d 786), the language of this statute shall be given its plain meaning.

"The most serious *crime*" is singular, contemplating that there could be more than one offense committed for which a defendant could be acquitted, as did occur in the present case. In the event that the legislature had intended to provide for consecutive periods of commitment, it could have clarified this statute via express language to that effect. Absent any express intent to the contrary, we must read section 5—2—4(b) to be in accord with the ordinary use and meaning of its terms. *Howlett v. Doglio* (1949), 402 Ill. 311, 83 N.E.2d 708.

As stated, the prime consideration in construing statutory enactment is to give effect to the intent of the legislature. (*People v. Scott* (1974), 57 Ill. 2d 353, 358, 312 N.E. 596.) In ascertaining this intent, the entire statute must be considered (*People ex rel. Morrison v. Sielaff* (1974), 58 Ill. 2d 91, 93, 316 N.E.2d 769) as well as "the evil to be remedied and the object to be attained." *People ex rel. Simpson v. Funkhouser* (1944), 385 Ill. 396, 403, 52 N.E.2d 1014.

The State maintains that the object to be attained by this statute is the continued protection of the public from a potentially dangerous situation and the simultaneous protection of the acquittee from a situation that he is, as yet, mentally incapable of dealing with. Furthermore, the State contends that the evil the statute was designed to remedy was the potentiality of the introduction into society of an individual who is still a danger to that society, and perhaps to himself as well.

Recently, this issue was addressed by the United States Supreme Court in *United States v. Jones* (1983), 463 U.S. 354, 77 L. Ed. 2d 694, 103 S. Ct. 3043, which held that the purpose of commitment, following an insanity acquittal, is the treatment of the committed acquittee's mental illness (the object to be attained), as well as the protection of both acquittee and society from the acquittee's potential dangerousness (the evil to be remedied). 463 U.S. 354, 368, 77 L. Ed. 2d 694, 708, 103 S. Ct. 3043, 3051.

In *Jones*, the Supreme Court explained the difference between a criminal sentence in which incarceration resulted versus the commit-

ment of an insanity acquittee. Initially, the court found that the factors of retribution, deterrence and rehabilitation play an important role in the choice of a particular sentence of incarceration. (463 U.S. 354, 368-69, 77 L. Ed. 2d 694, 708, 103 S. Ct. 3043, 3052.) "The State may punish a person convicted of a crime even if satisfied that he is unlikely to commit further crimes." 463 U.S. 354, 369, 77 L. Ed. 2d 694, 708, 103 S. Ct. 3043, 3052.

In direct contrast to the above criminal factors, different considerations are involved when a defendant is committed following a verdict of not guilty by reason of insanity. Most importantly, an acquittee has not been convicted and should not be punished. 463 U.S. 354, 369, 77 L. Ed. 2d 694, 708, 103 S. Ct. 3043, 3052.

Since the purpose of this type of commitment is the treatment of the individual's mental illness, the *Jones* court found no correlation between the length of time necessary for the acquittee's recovery and the severity of the acquittee's hypothetical criminal sentence. (463 U.S. 354, 369, 77 L. Ed. 2d 694, 708, 103 S. Ct. 3043, 3052.) In addition, the court further stated that "[t]he committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous." 463 U.S. 354, 368, 77 L. Ed. 2d 694, 708, 103 S. Ct. 3043, 3051.

Reviewing section 5—2—4(b) in light of *United States v. Jones*, we find, given the plain language of the statute, that it was the intent of the legislature to provide for a period of involuntary commitment which concentrated on the treatment of the mentally disturbed acquittee. This interpretation is bolstered by the "indefinite" character of this period of involuntary commitment which has been provided for in section 5—2—4(b). Upon operation of this statute, the committed acquittee is entitled to be released when he has recovered his sanity and is no longer dangerous to society, even if this is prior to the maximum term of involuntary commitment set by the trial court. In conjunction with the above, if the acquittee has not recovered from his mental illness by the time he has reached his maximum term of commitment, he shall be subject to a "civil" commitment hearing (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(i)) since an acquittee's hypothetical maximum sentence, as calculated by the trial court, does not provide the constitutional limit of this person's commitment. *United States v. Jones* (1983), 463 U.S. 354, 77 L. Ed. 2d 694, 103 S. Ct. 3043.

It is this court's interpretation that section 5—2—4(b) does not permit consecutive involuntary commitments, as this would be contrary to the legislature's intent to provide an indefinite period of commitment for the treatment of the acquittee's mental illness. It follows,

therefore, that the statute references the maximum period of commitment to the *most* serious crime, as all offenses result from the same mental illness.

Turning to the trial court's finding of a maximum commitment period not to exceed 22 years 6 months, we find the court erred in this calculation. Section 5—2—4(b) provides that the trial court is under a duty to determine the most punitive sanction that could have been imposed upon conviction for the most serious crime charged less credit for good behavior. While the time of involuntary commitment is indefinite, the maximum period is limited by reference to the relevant sentencing scheme. The maximum term for murder (the most serious crime) at the time of the offense in this case was any term in excess of 14 years (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(b)(1)), less good-time credit to be deducted pursuant to administrative regulation of the Department of Corrections.

■■ In this case, that would have resulted in defendant's parole eligibility in 20 years regardless of the maximum sentence imposed for the offense of murder (Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—3(a)(1)) less time credit for good behavior. In accordance with administrative regulations, a defendant eligible for parole at 20 years would receive an application of statutory good-time credit reducing the time of respondent's parole eligibility to 11 years 3 months. (Ill. Rev. Stat. 1975, ch. 38, par. 1003—6—3(a).) In addition, we find defendant eligible for compensatory good-time credit (*In re Commitment of Coppersmith* (1982), 108 Ill. App. 3d 161, 164, 438 N.E.2d 1267), in the amount of 90 days (*Lane v. Sklodowski* (1983), 97 Ill. 2d 311, 320, 454 N.E.2d 322, 326).

Accordingly, for the reasons stated, we vacate that portion of the trial court's order subjecting defendant to a maximum commitment of 22 years 6 months and he is committed to the Department for an indefinite period not to exceed 11 years from his arrest date. The order of commitment is so modified.

Judgment vacated in part and modified in part.

WILSON, P.J., and MEJDA, J., concur.