FRANK KULAK, Plaintiff-Appellant, v. MICHAEL BELLETIRE, Acting Director of Mental Health and Developmental Disabilities, *et al.*, Defendants-Appellees (The State's Attorney of Cook County, Intervenor-Appellee).

First District (1st Division)   No. 85—1585

Opinion filed September 30, 1986.

Mark J. Heyrman, of Edwin F. Mandel Legal Aid Clinic, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for appellees.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, Frank Kulak, appeals from the order of the circuit court of Cook County denying his motion for summary judgment and granting the motion of an intervenor, the State's Attorney of Cook County, to dismiss the plaintiff's petition for a writ of *habeas corpus* for failure to state a cause of action.

The record reveals that, in May 1969, the plaintiff was charged

with several counts of murder, attempted murder, and aggravated battery. On February 27, 1970, the plaintiff was found unfit to stand trial (Ill. Rev. Stat. 1969, ch. 38, par. 104—1), and remanded to the custody of the Department of Mental Health pursuant to section 104—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, ch. 38, par. 104—3), which provided for the automatic confinement of unfit defendants "during the continuance of that condition."

At a hearing on December 3, 1975, the plaintiff was again found unfit to stand trial, this time pursuant to section 1005—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1), which replaced section 104—1 as the fitness standard. The new fitness statute provided that persons found unfit must either be committed under the Mental Health Code of 1967, or released on bail on their own recognizance (Ill. Rev. Stat. 1975, ch. 38, par. 105—2—2). Thus, after the plaintiff was again found unfit to stand trial, on December 3, 1975, another hearing was held, on December 12, 1975, and he was committed as "in need of mental treatment" under the Mental Health Code of 1967 (Ill. Rev. Stat. 1975, ch. 91½, par. 1—1 et seq.), and remanded to the custody of the Department of Mental Health and Developmental Disabilities (Department). The finding of unfitness was based, in part, upon the recommendation of a psychiatrist who, in a report dated November 2, 1975, found that the plaintiff would "not be mentally fit in the foreseeable future."

On January 1, 1979, the Mental Health Code of 1967 was repealed and replaced by the Mental Health and Developmental Disabilities Code (the Code) (Ill. Rev. Stat. 1979, ch. 91½, par. 1—100 et seq.). Pursuant to section 3—813 of the Code (Ill. Rev. Stat. 1979, ch. 91½, par. 3—813), which provided that patients be released unless periodically recommitted, the plaintiff was again committed on April 20, 1979, July 18, 1979, and on October 19, 1979. The plaintiff has not had another civil commitment hearing since October 1979.

Thereafter, on December 28, 1979, sections 1005—2—1 and 1005—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—2—1, 1005—2—2) were repealed and replaced by Article 104 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., 1979 Supp., ch. 38, par. 104—10 et seq.). Pursuant to section 104—28(a), a defendant found unfit prior to the effective date of Article 104 is entitled to be released if he has been in the custody of the Department

> "for a period of time equal to the length of time that the defendant would have been required to serve, less good time, before becoming eligible for parole or mandatory supervised release had he been convicted of the most serious offense charged

and had he received the maximum sentence therefor." (Ill. Rev. Stat. 1985, ch. 38, par. 104—28(a).)

Section 104—28(a) further provides that, once the above period has expired, the court

"shall dismiss the charges against the defendant, with leave to reinstate. If the defendant has not been committed pursuant to the Mental Health and Developmental Disabilities Code, the court shall order him discharged or shall order a hearing to be conducted forthwith pursuant to the provisions of the Code." Ill. Rev. Stat. 1985, ch. 38, par. 104—28(a) (as amended pursuant to Public Act 82—577, eff. Sept. 24, 1981).

On January 7, 1981, pursuant to section 104—28(a), the plaintiff filed a motion in the circuit court of Cook County to dismiss the indictments filed against him by the State in May 1969. Following a hearing, the trial court denied the plaintiff's motion. The court concluded that the plaintiff had not been in custody for a period of time longer than he would have served had he been convicted of the most serious offense charged, as required under section 104—28(a). The trial court's decision was based upon its determination that consecutive sentences may be used to determine how long unfit defendants may be confined under section 104—28(a). The trial court also determined that the plaintiff remained unfit to stand trial, and that he was not eligible for civil commitment under the Code. The trial court ordered the plaintiff confined in the Department's maximum security facility at Chester until further order of court.

On November 14, 1984, the plaintiff filed a petition for a writ of *habeas corpus*, claiming that he was being held by the defendants, Michael Belletire, Acting Director of the Department, and Ralph Hay, Acting Facility Director of the Chester Mental Health Center, in violation of Illinois law and the Illinois and United States constitutions. The Department filed its return to the plaintiff's petition on December 14, 1984. It admitted that it was holding the plaintiff and claimed that it had authority to do so pursuant to the findings of unfitness in 1970 and 1975 and the trial court's order of January 7, 1981. The Department asked the court to determine the plaintiff's current status.

On December 11, 1984, the trial court allowed the Cook County State's Attorney to intervene over the plaintiff's objections. The intervenor, thereupon, filed a motion to dismiss the *habeas corpus* petition. Counsel for the plaintiff and the Department presented an agreed order to the court, which provided that a commitment hearing would have been held pursuant to the Code, with the plaintiff's continuing confinement being predicated on the results of that hearing.

Under the terms of the agreed order, the charges against the plaintiff were to be dismissed with leave to reinstate, and unless the defendant was civilly committed, he was to be discharged from the custody of the Department. However, the intervenor objected to the agreed order, and the case was continued to allow the plaintiff to file a motion for summary judgment.

Subsequently, on March 19, 1985, the Department filed a motion for entry of an agreed order. The motion was opposed by the intervenor, who subsequently filed a memorandum in opposition to the plaintiff's motion for summary judgment and in support of its motion to dismiss.

On May 16, 1985, the trial court denied the plaintiff's motion for summary judgment and granted the intervenor's motion to dismiss. The trial court held that the plaintiff had not been in custody for a period of time equal to the length of time he would have served before becoming eligible for parole if he had been convicted of and received the maximum sentence for the most serious offense with which he was charged. In so holding, the trial court again concluded that consecutive sentences may be used to determine how long unfit defendants may be confined under section 104—28(a). The plaintiff now appeals the trial court's May 16, 1985, order.

On appeal, the plaintiff raises the following issues: (1) whether the plaintiff has been confined as unfit to stand trial in excess of the period provided for in section 104—28(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104—28(a)); (2) whether the plaintiff's confinement for 15 years exceeds the reasonable period of time necessary to determine whether he will ever become fit, and thereby violates due process; (3) whether the plaintiff's confinement violates equal protection because he is treated differently than civil patients; (4) whether the trial court erred in dismissing the plaintiff's petition without allowing him to prove that the conditions of his confinement constitute punishment; (5) whether the plaintiff's confinement violates the *ex post facto* clause and the Illinois statute prohibiting retrospective legislation; and (6) whether the plaintiff's confinement violates section 104—23(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 104—23(b)) because he did not receive a timely discharge hearing.

Although the plaintiff has presented several issues for our review in this appeal, it is unnecessary for this court to decide all of these issues. Our resolution of this appeal is based upon the determination that the plaintiff has been confined in excess of the period provided for in section 104—28(a) (Ill. Rev. Stat. 1983, ch. 38, par. 104—28(a)),

and that the plaintiff's prolonged confinement here is in violation of the United States Supreme Court's holding in *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845. Furthermore, a reviewing court will not consider issues which are not essential to the determination of the case before it. *Del Bianco v. American Motorist* (1979), 73 Ill. App. 3d 743, 746, 372 N.E.2d 953.

In disposing of this appeal, we find that this court's decision in *People v. Hampton* (1984), 121 Ill. App. 3d 273, 459 N.E.2d 985, is apposite here. In *Hampton*, we considered whether consecutive sentences were prohibited under section 1005—2—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(b)). The defendant in *Hampton* was found not guilty by reason of insanity of murder and attempted murder and was, accordingly, subject to involuntary commitment pursuant to section 1005—2—4(b). Under the provisions of section 1005—2—4(b), a defendant's initial commitment order may not exceed

> "the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole had he been convicted of and received the maximum sentence for *the most serious crime* for which he has been acquitted by reason of insanity." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(b).

The trial court in *Hampton* determined that the crimes for which Hampton had been acquitted by reason of insanity were separate and distinct offenses and, accordingly, consecutively sentenced him in order to determine the length of his initial commitment order. On appeal, we determined that Hampton's crimes were separate and distinct, but also determined that consecutive sentences were prohibited under section 1005—2—4(b). In vacating the trial court's order, we stated:

> " 'The most serious *crime*' is singular, contemplating that there could be more than one offense committed for which a defendant could be acquitted, as did occur in the present case. In the event that the legislature had intended to provide for consecutive periods of commitment, it could have clarified this statute via express language to that effect. Absent any express intent to the contrary, we must read section 5—2—4(b) to be in accord with the ordinary use and meaning of its terms. [Citation.]"
> (Emphasis in original.) *People v. Hampton* (1983), 121 Ill. App. 3d 273, 276, 459 N.E.2d 985.

The basis for our holding in *Hampton* was that the imposition of consecutive sentences was prohibited under section 1005—2—4(b) be-

cause the word "crime" is singular. Our reasoning in *Hampton* is persuasive here, and thus, we find that the plain language of section 104—28(a) (Ill. Rev. Stat. 1985, ch. 38, par. 104—28(a)) does not authorize the imposition of consecutive sentences to determine the maximum period an unfit defendant may be confined. Section 104—28(a) provides for the trial court to calculate the period of time that a defendant would have served if he had been convicted of and received the "maximum sentence" for the "most serious offense charged." As in *Hampton*, the "most serious offense" is singular, which recognizes that a defendant might have been convicted of more than one offense. The statute's reference to the "maximum sentence" is also in the singular. Thus, if the legislature had intended for the trial court to calculate the period of time that a defendant could have served if he had been convicted of more than one offense, it would have used the words "offenses" and "sentences," thereby indicating that the imposition of consecutive sentences would be appropriate. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4.) The legislature's failure to use the plural of the words "offense" and "sentence" is a clear indication that it intended to determine the maximum period under section 104—28(a) based on only one offense and one sentence.

■ This court must read the language of section 104—28(a) in accordance with its plain and ordinary meaning (*Waste Management of Illinois, Inc. v. Environmental Protectional Agency* (1985), 137 Ill. App. 3d 619, 627, 484 N.E.2d 1128). Therefore, in the absence of any express language providing for a calculation based on consecutive sentencing, we can find no basis for the State's argument that consecutive sentencing should be used to determine the maximum period that an unfit defendant may be confined. The language of section 104—28(a) is as plain as the language in section 1005—2—4(b), and thus, in light of our interpretation of substantially identical language in *Hampton*, we hold that consecutive sentencing is also prohibited under section 104—28(a).

The State attempts to distinguish *Hampton* on the ground that, unlike the plaintiff here who was charged with four counts of murder, the defendant in *Hampton* was charged with offenses differing in degrees of seriousness. It is the State's contention that an unfit defendant may receive consecutive sentences if he is charged with more than one offense of the same class and those offenses are the most serious of the offenses charged.

We find no merit in the State's argument. If the legislature had intended to permit consecutive sentencing for offenses of equal seriousness, it could have expressly stated that a defendant's commitment

period be calculated by referring to the maximum sentence he could have received for the "class of the most serious offense," rather than "the most serious offense." Under the express provisions of the extended term statute for example, a trial court may sentence "an offender to a term of imprisonment in excess of the maximum sentence *** *for the class of the most serious offense* of which the offender was convicted" if aggravated factors are present. (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a).) Thus, we conclude that the absence of similar language in section 104—28(a) indicates that the legislature did not intend to allow consecutive sentencing for two or more offenses of the same class under section 104—28(a).

■ We further find that the plaintiff's present confinement here of 15 years is violative of the United State Supreme Court's holding in *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845. In determining that the petitioner's confinement in *Jackson* of 3½ years was a violation of his right to due process, the court there stated:

> "[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case [*i.e.*, that he will become fit in the foreseeable future], then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." 406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845, 1858.

Thus, in light of *Jackson*, we find that the defendant's confinement here for 15 years is far more than a reasonable period of time to determine whether there is a substantial probability that the plaintiff will ever become fit to stand trial. Thus, we conclude that the plaintiff's confinement has surpassed any period of time permitted under the due process clause. Also, there is still no credible evidence in the record which would indicate, even at this late date, that the plaintiff will become fit in the foreseeable future.

We, therefore, reverse the decision of the trial court, and in accordance with the provisions of section 104—28(a) (Ill. Rev. Stat. 1985, ch. 38, par. 104—28(a)), the charges against the plaintiff are dismissed with leave to reinstate. We further order that the plaintiff be discharged unless, after a hearing, he is civilly committed pursuant to the provisions of the Mental Health and Developmental Disabilities

Code (Ill. Rev. Stat. 1985, ch. 91½, par. 1—100 *et seq.*).

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

CAMPBELL and BUCKLEY, JJ., concur.