# Illinois Official Reports

## Appellate Court

---

### *People v. Steele-Kumi*, 2014 IL App (1st) 133068

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. SCHAKIRA STEELE-KUMI, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-13-3068 |
| Filed | November 17, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant was found not guilty by reason of insanity on two charges of aggravated battery, the application of consecutive sentences in the calculation of the *Thiem* date for defendant's maximum commitment was prohibited by the language of section 5-2-4(b) of the Unified Code of Corrections; therefore, the trial court properly granted defendant's petition under section 2-1401 of the Code of Civil Procedure to reduce her period of maximum commitment to three years and six months based on a maximum term of seven years for one aggravated battery conviction with a day-for-day good-conduct credit. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 10-CR-19806, 10-CR-20203; the Hon. Sharon Sullivan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

Edwin F. Mandel Legal Aid Clinic, of Chicago (Mark J. Heyrman, of counsel), for appellee.

Panel    JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Harris concurred in the judgment and opinion.

## OPINION

¶ 1    The State appeals from an order reducing the maximum commitment period for defendant-appellee Schakira Steele-Kumi (defendant), who was found not guilty by reason of insanity on two charges of battery. The commitment period reflects the length of time that defendant would have served on a single sentence for one charge rather than consecutive sentences on both charges. We address whether the statutory provision requiring the calculation of an insanity acquittee's maximum commitment period to reflect "the maximum sentence of the most serious crime for which he has been acquitted" is required to be calculated so as to incorporate consecutive sentences that would have been imposed had the defendant been convicted on multiple charges.

¶ 2                                BACKGROUND

¶ 3    On October 25, 2010, defendant was arrested and charged with aggravated battery for allegedly striking a police officer who had responded to a call of a disturbance on a Chicago Transit Authority bus. Two days later, while in the custody of the Cook County sheriff and awaiting a bond hearing for the October 25 incident, defendant allegedly kicked a deputy sheriff in the abdomen. For that October 27, 2010 incident, defendant was again charged with aggravated battery. By agreement of the parties, the charges arising from these separate incidents were consolidated and tried in a single bench trial. On July 25, 2011, the defendant was found not guilty by reason of insanity with respect to both charges.

¶ 4    On November 1, 2011, at a hearing pursuant to section 5-2-4(a) of the Unified Code of Corrections (730 ILCS 5/5-2-4(a) (West 2010)), the trial court determined that the defendant was in need of mental health services on an inpatient basis and placed the defendant with the Department of Human Services. The court then conducted a hearing on November 7, 2011 to determine the maximum period of defendant's commitment pursuant to section 5-2-4(b), which directs the court to assess "the maximum length of time that the defendant would have been required to serve, less credit for good behavior *** had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity." 730 ILCS 5/5-2-4(b) (West 2010). The ending date of the maximum

- 2 -

commitment period calculated under section 5-2-4(b) is often referred to as the "*Thiem* date" in reference to *People v. Thiem*, 82 Ill. App. 3d 956 (1980).

¶ 5 At the November 7, 2011 hearing, the State argued that the defendant's maximum commitment period should be seven years, and thus the *Thiem* date should be October 25, 2017, seven years from the date of defendant's arrest. The State argued that, had she been convicted on the aggravated battery charges, the defendant would have been required to serve consecutive sentences under section 5-8-4 of the Unified Code of Corrections. 730 ILCS 5/5-8-4 (West 2010). Specifically, the State argued that defendant's battery against a deputy sheriff while awaiting a bond hearing would implicate section 5-8-4(d)(8), which requires the imposition of consecutive sentences where "a person charged with a felony commits a separate felony while on pretrial release or in pretrial detention in a county jail facility or county detention facility." 730 ILCS 5/5-8-4(d)(8) (West 2010). The State contended that, as each aggravated battery charge carried a maximum sentence of 7 years, the sentences served consecutively would amount to 14 years. Assuming that the time served would be reduced due to good behavior, which the parties agreed would be credited on a "day-for-day" basis, the State argued that the 14-year period would be reduced to 7 years. Thus, the State contended that seven years should be the applicable maximum period of confinement assessed pursuant to section 5-2-4(b). The record does not indicate that defendant's counsel at that time, the Cook County public defender, raised any objection at the hearing to the State's calculation. Accordingly, the trial court ordered that the defendant's commitment was not to exceed seven years from the date of her arrest, or October 25, 2017.

¶ 6 Defendant, through the public defender, filed a notice of appeal on November 7, 2011. The notice appealed from the July 25, 2011 judgment of not guilty by reason of insanity and the "[*Thiem*] Date of October 25, 2017," but did not otherwise specify any claimed error. On September 26, 2012, the public defender filed, in this court, a motion to dismiss the appeal alleging lack of appellate jurisdiction. The public defender cited our supreme court's holding in *People v. Harrison*, 226 Ill. 2d 427 (2007), that a finding of not guilty by reason of insanity is an acquittal and thus not subject to appellate review. The public defender's motion to dismiss the appeal stated that defendant had raised "no appeal from the postacquittal adjudication" and concluded that "in light of *Harrison*, and the non-existence of any postacquittal matters, the finding of [not guilty by reason of insanity] is not an appealable order." This court granted the motion to dismiss defendant's direct appeal on October 4, 2012.

¶ 7 According to defendant, she did not consent to the public defender's motion to dismiss her appeal. She subsequently obtained new legal counsel through the Mandel Legal Aid Clinic. On May 17, 2013, defendant filed a petition pursuant to section 2-1401 of the Code of Civil Procedure seeking reduction of the seven-year maximum commitment period ordered by the trial court. 735 ILCS 5/2-1401 (West 2010). The petition acknowledged the prior dismissal of her direct appeal and recognized that a finding of not guilty by reason of insanity is not an appealable order, but contended that she "only intended to appeal her *Thiem* date," not the underlying acquittal by reason of insanity.

¶ 8 Defendant's brief in support of her section 2-1401 petition argued that section 5-2-4(b) of the Unified Code of Corrections does not permit a maximum period of commitment premised on consecutive sentences. Defendant argued that under our decision in *People v. Hampton*, 121 Ill. App. 3d 273 (1983), the commitment period calculated under section 5-2-4(b) must

reflect the sentence for only the single most serious crime charged and thus in her case only one of the two battery charges should have been taken into account. As either charge implicated a maximum seven-year sentence, which would be reduced by half with credit for good behavior, she argued that her maximum commitment period should have been assessed as three years and six months, half of the seven-year period ordered by the court. Thus, she submitted that her *Thiem* date should fall on April 25, 2014, not on October 25, 2017.

¶ 9 The State moved to strike defendant's petition on June 6, 2013, contending that in calculating the *Thiem* date under section 5-2-4(b), "the trial court must refer to the existing sentencing scheme in determining the most severe and punitive punishment that could be imposed for a conviction." The State contended that two separate sentencing provisions of the Unified Code of Corrections required the application of consecutive sentences given the defendant's circumstances. Specifically, the State noted that section 5-8-4(d)(8) requires consecutive sentences when a felony is committed while in pretrial detention for a prior felony, and that section 5-8-4(d)(8.5) also requires consecutive sentences where a person commits a battery against a sheriff's employee while in pretrial detention. 730 ILCS 5/5-8-4(d)(8), (8.5) (West 2010). Under these sentencing provisions, the State argued, "the maximum period of confinement for defendant must be computed based on the two cases being run consecutively." According to the State's calculation, "the maximum sentence for these two cases is 7+7 or an aggregate sentence of 14 years. Because the sentences are served with day for day credit, the maximum period of confinement is one half of 14 years, that is 7 years from October 25, 2010."

¶ 10 The State further argued that "had the legislature intended to limit the imposition of a consecutive sentence" in calculating the *Thiem* date, "it could have enacted such limiting language" and thus the court should not "read a limitation into the statute." The State further argued that defendant's reliance on *Hampton* was misplaced because, whereas the *Hampton* defendant "was convicted of two counts in a single case, murder and attempt[ed] murder," the defendant here "had two separate cases that under two separate statutes are mandatorily consecutive in sentencing." Thus, the State argued that to not apply consecutive sentences in defendant's *Thiem* date calculation would "render meaningless the fact that these are separate cases on different days."

¶ 11 Defendant's response urged that section 5-8-4(d)(8)'s provisions regarding consecutive sentences were inapplicable. First, defendant argued that the statute "is only relevant when a person has been convicted of at least two crimes," whereas defendant had been acquitted by reason of insanity. Defendant also argued that consecutive sentences were inapplicable because "a *Thiem* date may only be premised on the sentence for a single crime charged" under section 5-2-4(b)'s instruction to calculate the commitment period by reference to the sentence for "the most serious crime for which [defendant] has been acquitted." 730 ILCS 5/5-2-4(b) (West 2010). Because the statute uses the singular term "crime," defendant argued, the *Thiem* calculation could not consider consecutive sentences for multiple crimes. Responding to the State's claim that *Hampton* was inapposite, defendant argued that the *Hampton* court had prohibited consecutive sentences in the *Thiem* date calculation even when the underlying crimes were "separate and distinct offenses." Defendant thus contended that *Hampton* had "resolved the exact issue present in the instant case" and held "that a *Thiem* date cannot be premised on consecutive sentences."

¶ 12 The trial court heard oral argument on the defendant's section 2-1401 petition on July 31, 2013. Defendant's counsel argued the issue was controlled by section 5-2-4(b)'s language that the period of commitment "shall not exceed the maximum length of time that the defendant would have been required to serve *** had he been convicted of and received the maximum sentence for the most serious crime for which he ha[d] been acquitted by reason of insanity." 730 ILCS 5/5-2-4(b) (West 2010). Defendant's counsel argued that due to the singular language of "most serious crime," as interpreted in *Hampton*, the trial court could not consider more than one crime and thus "consecutive sentences were impermissible" in the *Thiem* date calculation.

¶ 13 The State emphasized that section 5-2-4(b) requires reference to the sentencing provisions of the Unified Code of Corrections, which include consecutive sentencing provisions. The State also argued that the legislature could have but did not explicitly bar reference to consecutive sentencing in calculation of the *Thiem* date. The State further argued that since application of the extended-term sentencing statute to the *Thiem* calculation had been allowed in other cases, the consecutive sentencing provisions should likewise be applicable.

¶ 14 The State again urged that *Hampton* did not preclude reference to consecutive sentencing provisions because the underlying batteries by defendant comprised "two separate cases." Specifically, the State argued that it could have brought two separate cases against defendant, whereas *Hampton* was "one case in which the defendant committed and was tried at one time for a murder and an attempt[ed] murder." The State thus argued that defendant's *Thiem* date should reflect "the maximum amount of time she could have received on each of the separate case[s] [of] aggravated battery run consecutively as required by the sentencing statute."

¶ 15 The trial court, although noting "this was a novel issue," reasoned that "the language is actually very clear in section 5-2-4(b) in calculating the [*Thiem*] date." The court agreed with defendant's interpretation of the statute, emphasizing that "[t]he plain language states that it is the maximum sentence for the most serious crime" and noting that this phrase "is in the singular." The court also agreed that *Hampton* was the "controlling case" on the question and relied on that decision's conclusion that the phrase "most serious crime" was "singular." The trial court reasoned that under *Hampton*, "it is inappropriate to allow consecutive sentences of commitment following a not guilty by reason of insanity [verdict]." The court remarked that *Hampton* "has been on the books since 1983, has been interpreted as meaning a singular offense. And the State legislature has never sought to change that."

¶ 16 The court thus ruled that "the [*Thiem*] date should be for the singular [most] serious crime" and held the defendant's maximum period of commitment should be reduced to three years and six months to reflect a sentence for only one charge rather than consecutive sentences. Accordingly, the trial court entered an order modifying the *Thiem* date to April 25, 2014, three and a half years after the defendant's arrest.

¶ 17 On August 16, 2013, the State filed a motion to reconsider, arguing that "the Court was mistaken in not using the mandatory consecutive statutes to determine the *Thiem* date." The State contended that section 5-8-4(d)(8) mandated consecutive sentences for defendant, as she was "charged with a felony while on pretrial release or in pretrial detention" and that section 5-8-4(d)(8.5) independently mandated consecutive sentences "where a person commits a battery against a county correctional officer while in pretrial detention." The State argued that "under these statutes defendant's *Thiem* date must be computed using the

maximum sentence that could have been imposed on each case and run consecutively." The State again argued that *Hampton*'s holding was limited to the "imposition of consecutive sentences on two or more counts in the same case," but did not preclude consecutive sentences "for new crimes that a defendant commits while in pretrial detention for another case." The State thus asserted that *Hampton* did not bar application of consecutive sentences to the defendant's *Thiem* date calculation because her battery charges comprised different "cases."

¶ 18    The trial court heard argument on the motion to reconsider on September 12, 2013. The State reiterated that section 5-2-4(b) requires reference to the broader sentencing scheme, which in turn mandated consecutive sentences upon defendant. The State urged that *Hampton* only applied to counts within a single case but did not control here as it "did not involve a person who had one case who was in pretrial detention and picked up another new case." Because the defendant "ha[d] two separate cases," the State urged the court to restore the original seven-year commitment period reflecting consecutive sentences.

¶ 19    In response, defendant's counsel cited *Hampton*'s finding that section 5-2-4(b)'s phrase "the most serious crime" is singular and thus "even if [defendant] could get a consecutive sentence if convicted" of multiple crimes, "that doesn't matter for [*Thiem*] dates." Defendant also argued that the statutory language did not distinguish whether or not the crimes were in the same "case" and thus this concept was irrelevant to the *Thiem* date. Defendant argued that under *Hampton* the court must apply the statutory phrase "most serious crime" such that only one offense could affect the defendant's *Thiem* date calculation.

¶ 20    In its ruling, the trial court agreed that section 5-2-4(b)'s phrase "the most serious crime for which [defendant was] acquitted by reason of insanity" is "in the singular. It doesn't say crimes. It doesn't say cases. It doesn't say offenses. It says singular crime." The court acknowledged that *Hampton* had reviewed the same phrase and found that " '[t]he most serious crime' is singular, contemplating that there could [be] more than one offense committed for which a defendant could be acquitted." The trial court further cited *Hampton*'s reasoning that if "the legislature had intended to provide for consecutive periods of commitment, it could have clarified [section 5-2-4(b)] via express language to that effect," adding that "since [*Hampton*] came down in 1983, there has been no change in the language of that statute."

¶ 21    In denying the motion to reconsider, the court also found that the State's argument about "whether offenses are within a singular case or separate cases *** misses the point." Concluding that it "ha[d] to follow the clear language of the statute," the trial court reaffirmed its order granting defendant's petition to modify the *Thiem* date to three years and six months following the defendant's arrest. On October 1, 2013, the State filed a notice of appeal from the orders granting the defendant's section 2-1401 petition and denying its motion to reconsider.

¶ 22                                    ANALYSIS

¶ 23    As the State filed a timely notice of appeal from an order granting relief under a petition pursuant to section 2-1401 of the Code of Civil Procedure, we have jurisdiction under Illinois Supreme Court Rule 304(b)(3) (eff. Feb. 26, 2010). As set forth in the State's appellate brief, the issue presented is "[w]hether the circuit court improperly interpreted [section 5-2-4(b)] when it determined that, after being found not guilty by reason of insanity, defendant's

maximum period of involuntary commitment, or *Thiem* date, was April 25, 2014, rather than October 25, 2017." The issue in this appeal is one of statutory interpretation, which is a question of law. Accordingly, our standard of review is *de novo. Williams v. Staples*, 208 Ill. 2d 480, 487 (2004).

¶ 24 We begin our analysis by reviewing the relevant statutory provisions. Section 5-2-4 of the Unified Code of Corrections sets forth the proceedings that follow an acquittal by reason of insanity. 730 ILCS 5/5-2-4 (West 2010). First, section 5-2-4(a) requires the Department of Human Services to conduct an evaluation of the acquitted defendant "as to whether he is in need of mental health services" on either an inpatient or outpatient basis and to present such evaluation to the court. 730 ILCS 5/5-2-4(a) (West 2010). The court is also required to conduct a hearing to determine if the acquitted individual is in need of mental health services on an inpatient basis or an outpatient basis or not in need of such services; if the court finds that inpatient mental health services are necessary, the court must order the defendant to the Department of Human Services. 730 ILCS 5/5-2-4(a) (West 2010).

¶ 25 Section 5-2-4(b) instructs that "[i]f the Court finds the defendant in need of mental health services on an inpatient basis *** the initial order for admission of a defendant acquitted of a felony by reason of insanity shall be for an indefinite period of time." 730 ILCS 5/5-2-4(b) (West 2010). This provision requires the court to enter an order specifying the initial maximum period of commitment, instructing that: "Such period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior as provided in Section 5-4-1 of the Unified Code of Corrections, before becoming eligible for release had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity." *Id.* In other words, as explained by our supreme court, "section 5-2-4(b) requires the trial judge to determine the maximum length of time that the defendant could have been confined upon a criminal conviction, and to use that period as the maximum length of the defendant's commitment." *People v. Pastewski*, 164 Ill. 2d 189, 202 (1995). "This maximum length of time [of commitment] is known as the defendant's *Thiem* date." *Williams v. Staples*, 208 Ill. 2d 480, 483-84 (2004) (citing *People v. Thiem*, 82 Ill. App. 3d 956 (1980)). Our supreme court has characterized the calculation of the maximum commitment period under section 5-2-4(b) as "the performance of what is essentially a ministerial task." *Pastewski*, 164 Ill. 2d at 201 (noting that the trial court lacks "discretion to select, as a maximum period of commitment, a time other than the longest span provided by statute").

¶ 26 As the State points out, calculation of the *Thiem* date under section 5-2-4(b) requires reference to the sentencing provisions of the Unified Code of Corrections in order to determine the maximum length of time that the defendant would have been required to serve had she been "convicted of and received the maximum sentence for the most serious crime for which [s]he has been acquitted by reason of insanity." 730 ILCS 5/5-2-4(b) (West 2010). Here, the parties do not dispute that each of defendant's aggravated battery charges, standing alone, would result in a maximum seven-year sentence under the sentencing provisions in effect at the time of the commission of the offenses in 2010. See 720 ILCS 5/12-4(b)(18), (e)(2) (West 2010) (aggravated battery against a peace officer is a Class 2 felony); 730 ILCS 5/5-4.5-35(a) (West 2010) (Class 2 felony warrants sentence of three to seven years). The parties also agree that, taking into account sentencing credit for good behavior as required under the section 5-2-4(b) calculation, the actual time served under each count would be

reduced by half, from seven years to three years and six months. See 730 ILCS 5/3-6-3(a)(2.1) (West 2010) (providing, subject to certain exceptions, that "a prisoner who is serving a term of imprisonment shall receive one day of good conduct credit for each day of his or her sentence of imprisonment").

¶ 27    The crux of the parties' dispute is whether the *Thiem* date calculation under section 5-2-4(b) should incorporate sentences for one or both counts of aggravated battery for which defendant was acquitted by reason of insanity. The State argues that since convictions on the battery counts would mandate imposition of consecutive sentences under the Unified Code of Corrections, the maximum commitment period must reflect the time that would be served on two consecutive sentences. The State argues that the circumstances of defendant's second battery would implicate two provisions of section 5-8-4(d) of the Unified Code of Corrections, which sets forth circumstances when a court is required to impose consecutive sentences upon conviction of multiple offenses. First, section 5-8-4(d)(8) provides: "If a person charged with a felony commits a separate felony while on pretrial release or in pretrial detention in a county jail facility or county detention facility, then the sentences imposed upon conviction of these felonies shall be served consecutively regardless of the order in which the judgments of conviction are entered." 730 ILCS 5/5-8-4(d)(8) (West 2010). Separately, section 5-8-4(d)(8.5) provides: "If a person commits a battery against a county correctional officer or sheriff's employee while serving a sentence or in pretrial detention in a county jail facility, then the sentence imposed upon conviction of the battery shall be served consecutively with the sentence imposed upon conviction of the earlier misdemeanor or felony ***." 730 ILCS 5/5-8-4(d)(8.5) (West 2010). Under either provision, the State argues, conviction on defendant's battery charges would require her to serve 2 consecutive 7-year terms, totaling 14 years. After reducing for good behavior credit on a day-for-day basis, the State argues that the maximum period of commitment under section 5-2-4(b) should be seven years.

¶ 28    In its appeal, the State asserts that the trial court "completely disregarded the legislature's clear dictate" requiring consecutive sentences when it recalculated defendant's *Thiem* date to reflect only one of the two battery charges. The State argues that by not incorporating consecutive sentences in the calculation, the trial court improperly ignored the consecutive sentencing provisions of section 5-8-4(d) and thus violated section 5-2-4(b)'s mandate to refer to the Unified Code of Corrections to determine the maximum commitment period. The State contends that under the governing sentencing scheme, seven years was the " 'maximum length of time that the defendant would have been required to serve less credit for good behavior' " for "the two separate crimes" for which defendant was found not guilty by reason of insanity.

¶ 29    For the reasons that follow, we reject the State's arguments and agree with the trial court that the *Thiem* date calculation under section 5-2-4(b) should reflect the maximum sentence that would result from conviction on only one of the two battery charges against defendant. We thus affirm the reduction of the maximum commitment period from seven years to three years and six months.

¶ 30    We are persuaded, as was the trial court, that this issue is governed by the plain language of section 5-2-4(b) regarding calculation of the maximum commitment period, specifically the instruction to apply "the maximum sentence for the most serious crime for which [defendant] has been acquitted by reason of insanity." 730 ILCS 5/5-2-4(b) (West 2010). We

conclude here, as we did in the *Hampton* decision issued in 1983, that this singular phrase in section 5-2-4(b) precludes the incorporation of consecutive sentences in the *Thiem* date calculation.

¶ 31    As *Hampton* was expressly relied upon by the trial court, we discuss that decision in detail. In *Hampton*, the defendant was found not guilty by reason of insanity for the murder of one victim and the attempted murder of another. *Hampton*, 121 Ill. App. 3d at 274. Following the acquittal, the trial court "found the murder and attempted murder to be separate and distinct offenses committed at a different time and place for which consecutive sentence[s] would be appropriate," and the court calculated a maximum period of commitment of 22 years and 6 months. *Id.* Defendant argued on appeal "that this period of commitment actually represented *** two consecutive 11-year 3-month periods of maximum commitment for both murder and attempted murder, since the court had previously found these offenses to be separate and distinct acts." *Id.* at 275. Defendant asserted that the murder and attempted murder, which had occurred only minutes apart, "constituted a single psychotic episode, not subject to consecutive sentences or consecutive commitments." *Id.*

¶ 32    The State in *Hampton* argued that the murder and attempted murder offenses, "although related in time, involved separate elements and separate victims, and therefore the imposition of consecutive sentences would have been proper had the defendant been found guilty." *Id.* The State contended that "since these separate offenses would be subject to consecutive sentences, they should also be subject to separate periods of commitment." *Id.*

¶ 33    On appeal, our court "agree[d] that the defendant's actions constituted two separate and distinct offenses" as urged by the State. *Id.* Nevertheless, upon reviewing the statutory language, we "disagree[d] that section 5-2-4(b) authorizes the imposition of consecutive periods of commitment for these offenses." *Id.* We emphasized that "[t]he terms of section 5-2-4(b) provide a maximum commitment formula 'for *the most serious crime* for which [defendant] has been acquitted by reason of insanity.' " (Emphasis in original.) *Id.* at 276 (quoting Ill. Rev. Stat. 1981, ch. 38, ¶ 1005-2-4(b)). Noting that the "language of this statute shall be given its plain meaning," we held that the phrase " '[t]he most serious *crime*' is singular, contemplating that there could be more than one offense committed for which a defendant could be acquitted." (Emphasis in original.) *Id.* We reasoned that if "the legislature had intended to provide for consecutive periods of commitment, it could have clarified this statute via express language to that effect," but that "[a]bsent any express intent to the contrary, we must read section 5-2-4(b) to be in accord with the ordinary use and meaning of its terms." *Id.*

¶ 34    Noting that "the prime consideration in construing [a] statutory enactment is to give effect to the intent of the legislature," our decision in *Hampton* also discussed the purpose of the commitment period called for by section 5-2-4. *Id.* We recognized that the United States Supreme Court had recently "held that the purpose of commitment, following an insanity acquittal, is the treatment of the committed acquittee's mental illness ***, as well as the protection of both acquittee and society from the acquittee's potential dangerousness." *Id.* (citing *Jones v. United States*, 463 U.S. 354, 368 (1983)). We noted that whereas a postconviction sentence of incarceration implicates "factors of retribution, deterrence and rehabilitation," "different considerations are involved when a defendant is committed following a verdict of not guilty by reason of insanity," as such "an acquittee has not been convicted and should not be punished." *Id.* at 277 (citing *Jones*, 463 U.S. at 369).

¶ 35    We concluded, "given the plain language of [section 5-2-4(b)], that it was the intent of the legislature to provide for a period of involuntary commitment which concentrated on the treatment of the mentally disturbed acquittee." *Id.* We then reasoned that: "[S]ection 5-2-4(b) does not permit consecutive involuntary commitments, as this would be contrary to the legislature's intent to provide an indefinite period of commitment for the treatment of the acquittee's mental illness. It follows, therefore, that the statute references the maximum period of commitment to the *most* serious crime, as all offenses result from the same mental illness." (Emphasis in original.) *Id.* at 277-78. Holding that section 5-2-4(b) required calculation of "the most punitive sanction *** for the most serious crime charged," we vacated the trial court's order applying consecutive sentences and reduced the defendant's commitment period to reflect the time that would be served upon conviction for the single charge of murder. *Id.* at 278.

¶ 36    Notably, this court in 1986 confirmed *Hampton* and applied its logic to nearly identical language in section 104-28(a) of the Code of Criminal Procedure of 1963, which limited the confinement period of an individual found unfit to stand trial to the time the defendant would have served had he been " 'convicted of the most serious offense charged and had he received the maximum sentence therefor.' " *Kulak v. Belletire*, 148 Ill. App. 3d 268, 269-70 (1986) (quoting Ill. Rev. Stat. 1985, ch. 38, ¶ 104-28(a)). The *Kulak* plaintiff appealed from a trial court's decision permitting consecutive sentences in determining this period. *Id.* at 270-71. Relying on our discussion of the singular phrase "most serious crime" in *Hampton*, we held that application of consecutive sentences likewise conflicted with the phrases " 'most serious offense charged' " and " 'maximum sentence' " in section 104-28(a). *Id.* at 272-73. We held that if the legislature had intended the period to reflect multiple offenses, "it would have used the words 'offenses' and 'sentences,' " and thus the "failure to use the plural *** is a clear indication that it intended to determine the maximum period *** based on only one offense and one sentence." *Id.* at 273. Thus, "in light of our interpretation of substantially identical language in *Hampton*," we held that "consecutive sentencing is also prohibited under section 104-28(a)." *Id.*

¶ 37    The logic of *Hampton*, reaffirmed in *Kulak*, also applies to this appeal. That is, the singular phrase "most serious crime" simply cannot be reconciled with the application of consecutive sentences. As we said in *Hampton*, this phrase "contemplat[es] that there could be more than one offense committed for which a defendant could be acquitted" (*Hampton*, 121 Ill. App. 3d at 276), but the statute's plain language limits the *Thiem* calculation to a single sentence for a single crime.

¶ 38    As we observed in *Hampton*, the legislature could have easily employed language encompassing the potential sentences for all charged crimes rather than limiting the calculation to "the maximum sentence for the most serious crime." For instance, the statute could have instructed the court to calculate the maximum sentence for "any crimes for which he was acquitted," "all crimes for which he was acquitted," or simply "the crime (or crimes) for which he was acquitted." But the modifying term "most serious," coupled with the singular "crime," makes clear that the sentence for only one crime is to be considered in the calculation. Likewise, the legislature could have omitted the phrase "most serious crime" and directed calculation of the *Thiem* period based on the "maximum sentence sought by the prosecution" or simply the "maximum potential," "maximum permissible," or "maximum possible" sentence. Such language could encompass multiple offenses. Nevertheless, the

legislature chose the singular "most serious crime." Indeed, as the legislature has elected not to modify this phrase in the over 30 years since we analyzed it in *Hampton*, our conclusion that the legislative intent of "most serious crime" is singular is all the more supported.

¶ 39    Notably, the State does not dispute that the phrase "most serious crime" is singular or attempt to argue how it could be reconciled with application of sentences for multiple crimes. Nor does the State contend that *Hampton* was wrongly decided. Rather, the State argues *Hampton* is distinguishable on other grounds. First, the State notes that *Hampton*'s facts did not implicate the mandatory consecutive sentencing provisions that would apply to defendant's battery of a sheriff's officer while detained on a prior battery charge. Accordingly, the State argues that the trial court "completely ignored" these sentencing provisions and violated the legislature's intent when it determined that it could not apply consecutive sentences in defendant's *Thiem* calculation.

¶ 40    This arguments fails in light of section 5-2-4(b)'s unequivocal language governing calculation of the *Thiem* date based on the single most serious crime. We recognize that, had defendant been convicted on both battery charges, the defendant's alleged battery of an officer while awaiting a bond hearing might require imposition of consecutive sentences under either or both section 5-8-4(d)(8) and section 5-8-4(d)(8.5).[1] Nevertheless, our holding that section 5-2-4(b) precludes reference to consecutive sentences does not ignore or contradict these statutory provisions. While the section 5-2-4(b) calculation of the "maximum sentence for the most serious crime" requires reference to other provisions of the Unified Code of Corrections, its plain language refers to *one* sentence for *one* crime. Application of consecutive sentences necessarily involves sentences for multiple crimes and would thus be contrary to section 5-2-4(b)'s "most serious crime" calculation. Thus, consecutive sentences simply cannot factor into the *Thiem* date determination, regardless of whether the underlying facts may have justified consecutive sentences if the defendant had been convicted of the charged offenses.

¶ 41    We also address the State's contention that the failure to apply consecutive sentencing statutes to defendant's *Thiem* calculation contradicts case law permitting application of other sentencing statutes in setting the *Thiem* date. The State relies heavily on our supreme court's holding that the *Thiem* date for an insanity acquittee with a prior criminal record may reflect an enhanced sentence under section 5-5-3.2(b)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, ¶ 1005-5-3.2(b)(1)), which "allow[ed] the imposition of an extended-term sentence on a felon who *** has previously been convicted of committing a felony." *People v. Pastewski*, 164 Ill. 2d 189, 196 (1995).

¶ 42    We do not find *Pastewski* applicable, as it did not concern whether multiple sentences are permitted in the section 5-2-4(b) calculation. *Pastewski* involved defendants who had been convicted of burglary prior to their acquittal by reason of insanity on unrelated charges.

_____

[1]Since we hold that consecutive sentences are inapplicable to the *Thiem* calculation due to the express language of section 5-2-4(b), we need not decide whether defendant's battery while awaiting bond hearing falls within the scope of "pretrial detention in a county jail facility or county detention facility" under section 5-8-4(d)(8) (730 ILCS 5/5-8-4(d)(8) (West 2010)), or whether the battery was committed "against a county correctional officer or sheriff's employee while serving a sentence or in pretrial detention in a county jail facility" under the language of section 5-8-4(d)(8.5) (730 ILCS 5/5-8-4(d)(8.5) (West 2010)).

"[T]he trial court determined that the defendants' prior criminal records would have qualified them for extended-term sentences under section 5-5-3.2(b)(1) *** if the defendants had been found guilty of the present charges." *Id.* at 193-94. The *Pastewski* defendants argued that application of the extended-term provision was "punitive" in nature and "inconsistent with the nature of an insanity acquittal." *Id.* at 196. Our supreme court disagreed and found "no conflict between the successful assertion of an insanity defense and use of the recidivism provision of the extended-term statute in determining the maximum commitment period." *Id.* at 197.

¶ 43    *Pastewski* does not alter our conclusion here. Whether other provisions of the Unified Code of Corrections may enhance the single hypothetical "maximum sentence" under section 5-2-4(b) is a distinct question from whether the calculation may incorporate multiple sentences for different offenses. Although *Pastewski* held that prior convictions could be taken into account in determining the "maximum sentence," it did not address whether the calculation could reflect sentences for multiple charges for which the defendant has been acquitted by reason of insanity. Accordingly, the *Pastewski* holding has no bearing on whether section 5-2-4(b) permits the maximum commitment period to reflect consecutive sentences.

¶ 44    Likewise, the State's reliance on *People v. Cross*, 274 Ill. App. 3d 159 (1995), is also unavailing. In *Cross*, the trial court determined that "a natural life sentence [was] to be utilized as the maximum period of defendant's involuntary commitment" under section 5-2-4(b) after defendant was found not guilty by reason of insanity for two murders. *Id.* at 161. The sole issue on appeal was whether a term of commitment for natural life was permissible under section 5-2-4(b). *Id.* In holding that "a sentence of natural life may be utilized as the maximum period of commitment" under section 5-2-4(b) (*id*. at 163), we noted that a separate provision of the Unified Code of Corrections mandated a term of natural life imprisonment for a defendant "found guilty of murdering more than one victim." *Id*. (citing Ill. Rev. Stat. 1985, ch. 38, ¶ 1005-8-1(a)(1)(c)). Although *Cross* approved a single sentence of natural life as the basis for the *Thiem* calculation, it did not address the use of *multiple* sentences and thus does not impact our holding that consecutive sentences are inapplicable in assessing the "maximum sentence for the most serious crime" under section 5-2-4(b).

¶ 45    Finally, we address the State's argument that *Hampton* is inapplicable because it concerned crimes committed in the "same case," whereas the batteries committed by defendant occurred on separate days and could have been prosecuted as separate cases. The State implies that, had defendant been found not guilty by reason of insanity in separate proceedings on both battery incidents, she would be subject to two consecutive periods of commitment. As the State did not elect to bring separate cases, we are not faced with and need not address that hypothetical situation. However, we note the State cites no post-*Hampton* decision permitting consecutive periods of commitment after separate prosecutions and insanity acquittals.

¶ 46    Moreover, the State's reliance on the concept of separate "cases" is undermined by the *Hampton* decision itself. Indeed, the State in *Hampton* unsuccessfully asserted a nearly identical argument in seeking consecutive commitment periods for the charges of murder and attempted murder. The State "contend[ed] that these offenses, although related in time, involved separate elements and separate victims, and therefore the imposition of consecutive sentences would have been proper had the defendants been found guilty of the offenses."

*Hampton*, 121 Ill. App. 3d at 275. "[S]ince these separate offenses would be subject to consecutive sentences," the State argued, "they should also be subject to separate periods of commitment." *Id.* Although the *Hampton* court expressly agreed that the murder and attempted murder were "two separate and distinct offenses" (*id.*), we nevertheless held that application of consecutive sentences would conflict with section 5-2-4(b)'s directive to consider only the single most serious crime. *Id.* at 276. Given our holding in *Hampton* that even "separate and distinct offenses" do not justify use of consecutive sentences in calculating the maximum commitment period, we see no reason to depart from its logic based on whether the State could have prosecuted offenses in separate cases.

¶ 47     Instead, we agree with the trial court that the State's reliance on whether the offenses could constitute multiple cases "misses the point" in light of the clear statutory language that the maximum period of commitment is to be gauged by the "maximum sentence for the most serious crime for which he has been acquitted by reason of insanity." We note that this language appears in the current version of section 5-2-4(b) just as it did when *Hampton* was decided. Thus, a plain reading of the statute leads to the same conclusion that the phrase "is singular" and that if "the legislature had intended to provide for consecutive periods of commitment, it could have clarified this statute via express language to that effect." *Id.*

¶ 48     After reviewing this question of statutory interpretation *de novo*, we agree with the trial court that application of consecutive sentences in the *Thiem* date calculation is prohibited by the plain language of section 5-2-4(b) of the Unified Code of Corrections. As we held in *Hampton*, the statutory directive to assess the maximum commitment period by reference to the "maximum sentence for the most serious crime for which [defendant] has been acquitted by reason of insanity" (730 ILCS 5/5-2-4(b) (West 2010)) is singular and does not permit consideration of consecutive sentences for multiple crimes. Accordingly, independent provisions of the Unified Code of Corrections regarding consecutive sentences upon conviction do not factor into the *Thiem* date calculation upon acquittal by reason of insanity. We thus agree with the trial court that the defendant's maximum commitment calculation under section 5-2-4(b) should reflect only one of the two battery charges for which she was acquitted by reason of insanity. Thus, the trial court correctly granted defendant's section 2-1401 petition to reduce the maximum commitment period from seven years to three years and six months and correctly denied the State's motion to reconsider that order.

¶ 49     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 50     Affirmed.